689 F.2d 724
 6 Ed. Law Rep. 927, 11 Fed. R. Evid. Serv. 1471
 Charles P. JONES, Plaintiff-Appellee, Cross-Appellant,
v.
ILLINOIS DEPARTMENT OF REHABILITATION SERVICES and James S.
Jeffers, in his official capacity as Director of
the Illinois Department of
Rehabilitation Services,
Defendants-
Appellants,
Cross-Appellees,
v.
ILLINOIS INSTITUTE OF TECHNOLOGY and Dr. Thomas L. Martin,
Jr., President, Defendants-Appellees.
 Nos. 81-1267, 81-1312, 81-2478 and 81-2558.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 31, 1982.
Decided Sept. 27, 1982.
 
 Mary Anne Smith, IIT, George Harold Klumpner, Chicago, Ill., for defendants-appellants, cross-appellees.
 Marc P. Charmatz, National Assoc. of the Deaf, Washington, D. C., for plaintiff-appellee, cross-appellant.
 Before PELL, Circuit Judge, KASHIWA, Associate Judge,* and ESCHBACH, Circuit Judge.
 PELL, Circuit Judge.
 
 
 1
 The plaintiff-appellee, cross-appellant Charles P. Jones brought this action for declaratory and injunctive relief under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-94, against the Illinois Department of Rehabilitation Services (IDRS) and its director Jeffers, and the Illinois Institute of Technology (IIT) and its President Martin. His complaint alleged that by failing to provide him with the services of a sign language interpreter to enable him effectively to participate in and benefit from his classes at IIT, IDRS violated the provisions of Title I of the Act, 28 U.S.C. §§ 701-50, and both IDRS and IIT violated section 504 of the Act, 29 U.S.C. § 794. All parties filed motions for summary judgment. As to Jones' claim under Title I of the Act, the court granted IDRS' motion and denied Jones' motion, finding that there was no private right of action under that portion of the Act. As to Jones' section 504 claims, the court granted Jones' motion, and denied that of IDRS, concluding that although either IIT or IDRS could be required to provide interpreter services under the Act, IDRS had the primary responsibility for providing such services.[1] As to IIT's cross-claim against IDRS for the cost of services already provided, the court found that claim barred by the Eleventh Amendment and denied the motion.[2] The court entered an injunction requiring IDRS to provide interpreter services to Jones at IDRS expense, and if Jones ceased to be eligible for IDRS vocation rehabilitation services, requiring IIT to do the same.
 
 
 2
 IDRS appeals from that portion of the judgment granting Jones relief under section 504 of the Act. Jones appeals from the denial of his claim under Title I of the Act. Jones and IIT also appeal from the court's disposition of their claims for attorneys' fees. The case presents the following issues on appeal: (1) whether the district court erred in holding that no private right of action can be implied under Title I of the Act; (2) whether a cause of action exists under 42 U.S.C. § 1983 for a violation of Title I of the Act; (3) whether the district court erred in holding that IDRS had the primary responsibility under section 504 to provide interpreter services; and (4) whether the district court erred in ruling on Jones' and IIT's motions for attorneys' fees.
 
 I.
 
 3
 The facts were stipulated by the parties, and are set forth in some detail in the opinion of the district court, 504 F.Supp. 1244 (N.D.Ill.1981). We will rehearse only those necessary to disposition of the issues before this court. The plaintiff Jones is a deaf person and therefore a handicapped individual within the meaning of the Act, 29 U.S.C. § 706(7)(a). He is also a "qualified handicapped person" within the meaning of regulations promulgated pursuant to the Act, which means, with respect to post-secondary and vocational education services, that he meets the academic and technical standards requisite to admission and participation. 34 C.F.R. § 104.3(k)(3) (1981). Until May of 1982, when he graduated, Jones was a student at IIT majoring in mechanical engineering. He required the services of an interpreter to participate in and benefit from his classes.
 
 
 4
 IDRS, the Illinois state agency responsible for the state's vocational rehabilitation (VR) program, receives financial assistance from the federal Rehabilitation Services Administration to carry out that program. IDRS has determined that Jones is eligible for VR services, and has provided him with financial assistance for tuition, room and board, and books to enable him to attend IIT. IIT is a not-for-profit institution of higher education which receives federal funds, and has signed an Assurance of Compliance Form, agreeing to comply with section 504 as a condition of receiving such funds.
 
 
 5
 Jones was to begin classes at IIT in late August of 1979. On August 10, IDRS advised IIT that it could not legally assume the cost of interpreter services for Jones' classes. IIT thereupon provided an interpreter for Jones until October 4, 1979, when IIT informed IDRS it would not continue to do so. IDRS provided interpreter services from October 8, 1979 until October 26, 1979, when its director determined it would make no more payments. IIT paid for an interpreter for the remainder of Jones' first semester. On December 11, 1979, IIT informed Jones that it would no longer provide interpreter services. Subsequently IDRS and IIT agreed to share the cost of the interpreter pending the resolution of this case.
 
 II.
 
 6
 We turn first to Jones' contention, raised for the first time at the oral argument of this case, that the case is moot because Jones graduated from IIT on May 16, 1982.
 
 
 7
 Jones relies primarily on the case of DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). DeFunis had sought admission to law school but was not accepted. He brought suit alleging that he had been discriminated against, and obtained an injunction requiring his admission to law school. By the time the appeal reached the Supreme Court, DeFunis was in his final quarter of law school, and was about to graduate. The Supreme Court held that because DeFunis would complete law school regardless of any decision of the Court, there was no definite and concrete controversy between the parties, and therefore the case was moot. The Court also rejected any suggestion that the case fell within the "capable of repetition yet evading review" exception to the mootness doctrine, noting, "DeFunis will never again be required to run the gauntlet of the Law School's admission process, and so the question is certainly not 'capable of repetition' so far as he is concerned." 416 U.S. at 319, 94 S.Ct. at 1707.
 
 
 8
 We are persuaded that the instant case, however, does fall within the exception to the mootness doctrine. In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a pregnant woman brought suit challenging the constitutionality of the Texas criminal abortion statutes. By the time the case reached the Supreme Court, she was no longer pregnant. The Court rejected any contention that the case was moot, noting first that a pregnancy would generally come to term before the usual appellate process could be completed, thereby making the case one that could evade review. Secondly, the Court pointed out, "Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us," 410 U.S. at 125, 93 S.Ct. at 712, and thus the case was capable of repetition. We believe the case before us is similarly capable of repetition yet evading review.
 
 
 9
 The case is capable of repetition both as to Jones, the named plaintiff, and as to other deaf clients of IDRS who are or will be students at IIT. Unlike DeFunis, Jones is completing only his undergraduate education. Although he disclaims any current intent to attend graduate school, that is a possibility that cannot be discounted in today's society and in his highly technical profession. If he returns to school as an IDRS client, the controversy over additional interpreter services would renew and continue for as long as he remained in school.
 
 
 10
 The case is also capable of repetition by other hearing-impaired IIT students who are IDRS clients. IIT points out that one deaf student who is an IDRS client is now enrolled at IIT, and another eligible student has been accepted for the fall of 1982. The court further takes judicial notice that a rubella epidemic in 1963-65 doubled the number of births of hearing-impaired infants, with the result that some 15,000 deaf individuals are now at or approaching the age of college or professional education. See, e.g., Deafness and Rubella: Infants in the 60's, Adults in the 80's, 125 American Annals Of The Deaf 959 (1980); U.S. News & World Rep., October 19, 1981 at 57. Thus the situation presented by this case is reasonably certain to recur at IIT and at other colleges and universities in Illinois and other states.
 
 
 11
 We conclude that Jones' graduation has not rendered his case moot. We turn, therefore, to consider the merits of the case; first, to Jones' claims against IDRS and IIT under section 504 of the Act and the regulations promulgated thereunder.
 
 III.
 
 12
 Section 504 of the Act, 29 U.S.C. § 794 (1976), provides:
 
 
 13
 No otherwise qualified handicapped individual in the United States, as defined in section 706(7), shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 
 
 14
 The Secretary of Health, Education and Welfare promulgated regulations under the statute.[3] They set out not only general requirements for all programs funded by the Agency, but detail, in subparts E, 34 C.F.R. §§ 104.41-47, and F, 34 C.F.R. §§ 104.51-54, respectively, the specific obligations pertinent to providers of postsecondary education, such as IIT, and providers of health, welfare and other social services, such as IDRS.[4]
 
 
 15
 The district court concluded that under the statutes and the regulations, either IDRS or IIT could be required to provide Jones with interpreter services. The court then turned to the more difficult question, "who has the primary responsibility for providing the interpreter services." 504 F.Supp. at 1252 (emphasis added). It concluded that since the Analysis of Final Regulations promulgated by the Secretary indicated that "the bulk" of auxiliary aids were to be paid for by state and private agencies, and not postsecondary institutions, and since nothing in the Act precluded IDRS from providing such services, the primary responsibility fell to IDRS, with IIT liable only if Jones ceased to be eligible for IDRS VR services.
 
 
 16
 IDRS contends the trial court erred in its interpretation of the regulations under subpart E, and that since IDRS does not operate a program of providing interpreters to students in postsecondary institutions, it has no responsibility to provide Jones with an interpreter. We turn first to analyze whether the district court correctly interpreted the applicable regulations under subpart E, and then to determine what obligations the regulations impose upon IDRS.
 
 
 17
 34 C.F.R. § 104.44(d) of subpart E, requires that a federal funds recipient such as IIT ensure that no handicapped student be denied the benefits of, excluded from participation in, or otherwise be subject to discrimination because of the absence of auxiliary aids. In subsection (d)(2), "auxiliary aids" is defined to include interpreters. IDRS argues that this clearly imposes the duty to provide interpreters on IIT. This analysis ignores the interpretive analysis of the regulations issued by the Secretary who promulgated them, and furthermore ignores IDRS' obligations as set forth in subpart F.
 
 
 18
 When regulation 104.44(d) was proposed, colleges and universities expressed concern about the cost of providing such auxiliary aids. The Secretary responded to that concern in the Analysis of Final Regulation:
 
 
 19
 Under § 104.44(d), a recipient must ensure that no handicapped student is subject to discrimination in the recipient's program because of the absence of necessary auxiliary educational aids. Colleges and universities expressed concern about the costs of compliance with this provision.
 
 
 20
 The Department emphasizes that recipients can usually meet the obligation by assisting students in using existing resources for auxiliary aids such as state vocational rehabilitation agencies and private charitable organizations. Indeed, the Department anticipates that the bulk of auxiliary aids will be paid for by state and private agencies not by colleges or universities.
 
 
 21
 34 C.F.R. pt. 84, App. A. at 359 (1981). Such an analysis, issued by the Secretary who promulgated the regulations and was charged with administration of the statutes, is entitled to substantial deference. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); see Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Furthermore, such a construction places the preliminary financial burden of supplying an interpreter directly on the state VR agency which receives federal Rehabilitation Services Administration funds specifically for the purposes of vocational rehabilitation and training, rather than on a university, which does not receive federal funds earmarked for that purpose. We believe a contrary construction, which would impose costly burdens upon colleges and universities without providing them with funds to meet them, would not only be ill-advised, but might well exceed the agency's authority under the statute. University of Texas v. Camenisch, 451 U.S. 390, 399, 101 S.Ct. 1830, 1835, 68 L.Ed.2d 175 (1981) (Burger, C. J., concurring) (intimating that interpretation of regulations under § 504 which imposed cost of provision of interpreter services on university might exceed statutory authority).
 
 
 22
 IDRS' interpretation of the regulations also ignores the duties imposed upon it by subpart F. Section 104.52(a) requires that no provider of services such as IDRS may provide benefits or services in a manner that limits the participation of qualified handicapped persons. Sections 104.52(d)(1) and (3) provide more specifically that recipients such as IDRS are required to provide auxiliary aids, again defined to include interpreters. Thus whether IDRS now operates a program of interpreter services is essentially irrelevant to its obligations under the regulation.[5] We further note that unlike the obligations imposed on universities under subpart E, those imposed by subpart F are not qualified by any language of the Secretary's interpretive analysis. Because the providers subpart F regulates are recipients of federal funds earmarked for compliance with the section, neither does it pose a danger of exceeding the statutory mandate. We therefore conclude that the trial court's interpretation of the regulations as placing the primary burden of providing interpreter services on IDRS was correct.[6]
 
 
 23
 The cases relied upon by IDRS to support its interpretation of the regulation are inapposite. In Camenisch v. University of Texas, 616 F.2d 127 (5th Cir. 1980), vacated and remanded on other grounds, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); Barnes v. Converse College, 436 F.Supp. 635 (D.S.C.1977); and Crawford v. University of North Carolina, 440 F.Supp. 1047 (M.D.N.C.1977), the plaintiffs were all ineligible for state VR services; therefore none of those courts were faced with determining whether the state agency had the primary responsibility for providing interpreter service.
 
 
 24
 We conclude, therefore, that the trial court correctly identified the respective obligations of IDRS and IIT under section 504 of the Act. The trial court's order granting Jones summary judgment against IDRS on the section 504 claim is therefore affirmed.[7]
 
 IV.
 
 25
 Jones and IIT also appeal from the district court's disposition of their claims for attorneys' fees under the Act, 29 U.S.C. § 794a(b) (1976). Jones sought fees and costs of $39,395.63, based on his attorneys' hourly rates and a multiplier of one-and-one-half. IIT sought an award of $5,250. The district court awarded Jones fees of $16,350, and denied IIT's motion altogether. We turn first to Jones' claim that the trial court erred in its determination of the amount of the fee award.
 
 
 26
 Our standard of review of a trial court's award of attorneys' fees is limited to the determination of whether the court abused its discretion in setting the fee award. See, e.g., Harrington v. De Vito, 656 F.2d 264, 269 (7th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982) (fee award under 42 U.S.C. § 1988).[8] Jones contends that the trial court abused its discretion because, although it adverted to the factors for evaluating fees claims set by this court in Muscare v. Quinn, 614 F.2d 577, 579 (7th Cir. 1980) (adopting test of Waters v. Wisconsin Steel Works, 502 F.2d 1309, 1322 (7th Cir. 1974), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), in § 1988 cases), it offered no analysis of them, and did not give specific reasons for its decision. Jones now seeks a remand for the district court to address "specifically" the Waters-Muscare criteria.
 
 
 27
 As an initial matter, we note that the factors enumerated in Muscare are guidelines, and it is not required that each be considered and passed on specifically. Coop v. City of South Bend, 635 F.2d 652, 655 (7th Cir. 1980). We are satisfied that by adverting in detail to the Muscare factors the trial court adequately evidenced the proper exercise of its discretion in setting the amount of the fee award.
 
 
 28
 Furthermore, we do not agree with Jones' contention that the court did not set forth his reasons for reducing the amount of the award. After noting the impact of the Muscare test on the fee, the court specifically pointed out, "Furthermore, attorneys' fees should be awarded only for preparation and presentation of the claims on which a plaintiff is determined to have prevailed." This is in accord with the law of this circuit on the award of attorneys' fees, as the district court indicated by its citation of Busche v. Burkee, 649 F.2d 509, 522 (7th Cir. 1981), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212, and Muscare, 614 F.2d at 580. See also Syvock v. Milwaukee Boiler Mfg., 665 F.2d 149, 162-65 (7th Cir. 1981). In this case, Jones alleged two separate violations of his rights: one under Title I of the Act, and the other under section 504. Because the court addressed but rejected the Title I claim against IDRS, it was not an abuse of discretion for the trial court to take that into account in determining the amount of a reasonable fee. See United Handicapped Federation v. Andre, 622 F.2d 342, 348 (8th Cir. 1980); Muscare, 614 F.2d at 580.
 
 
 29
 We conclude, therefore, although the case is a close one, that the trial court did not abuse its discretion in setting the amount of attorneys' fees Jones recovered.[9] The trial court did not, however, expressly consider or rule on Jones' claim for costs. Such costs are in general compensable under the statute. 29 U.S.C. § 794a(b) (1976). See, e.g., McPherson v. School District # 186, 465 F.Supp. 749, 763 (S.D.Ill.1978). The district court made no findings that these costs were in any way an exception to that rule. The case is therefore reversed and remanded, solely on this issue, with instructions to determine whether those items of costs should be awarded.
 
 
 30
 In ruling on IIT's motion for attorneys' fees, the trial court stated that in its opinion on the merits it did not have to reach the issue of whether IIT had standing, but that it was now necessary to reach that issue in order to determine whether IIT was a prevailing party for attorneys' fees purposes. It concluded that recovery under the Act was restricted to intended beneficiaries of the Act, and that IIT was not such a beneficiary and therefore lacked standing, and could not be a prevailing party within the meaning of section 794a(b). It therefore amended its opinion on the merits nunc pro tunc to delete the references in its previous opinion to the granting of the motion of IIT for summary judgment. IIT contends that the district court had no jurisdiction to amend the original judgment; that it had standing to bring a cross-claim against IDRS under Rule 13(g) of the Federal Rules of Civil Procedure; and that it is a prevailing party entitled to an award of attorneys' fees under the Act. We turn first to IIT's contention that the district court had no jurisdiction to amend the original judgment.
 
 
 31
 IIT first argues that the time in which a district court may sua sponte amend an original judgment is limited by the temporal and other strictures of Rules 52(b), 59(e) or 60(b) of the Federal Rules of Civil Procedure, and further, that the filing of the notice of appeal divested the district court of jurisdiction. Of these rules only 60(b) is even arguably applicable to this case. It permits the court to relieve a party from a final judgment because of mistake, inadvertence, surprise, or excusable neglect. The rule permits motions for such relief to be made within a reasonable time, up to one year. Courts have construed a "reasonable time" for court-initiated amendments to extend only to the time permitted for appeal. See, e.g., Meadows v. Cohen, 409 F.2d 750, 752 n.4 (5th Cir. 1969); 7 Moore, Federal Practice § 60.22(3) at 262 (2d ed. 1979).
 
 
 32
 We are not persuaded, however, that Rule 60(b) is the applicable rule. This is not a case of judicial mistake, inadvertence, surprise, or excusable neglect. Rather the motion for attorneys' fees required the court to examine issues beyond those it was necessary to reach in its original disposition in order to determine whether IIT had prevailed within the meaning of the Act. This case is not therefore controlled by the time limits of Rule 60(b), but rather by the opinion of this court in Terket v. Lund, 623 F.2d 29 (7th Cir. 1980), which addressed the question whether a court is divested of jurisdiction to award attorneys' fees after a notice of appeal is filed from the judgment on the merits. In holding that the district court retained such jurisdiction, the court specifically noted:
 
 
 33
 Regardless of whether an award under § 1988 is collateral enough to permit an interlocutory appeal, it seems clear that it involves an exercise of the district court's judgment requiring an examination of factors beyond the issues decided with the merits of the suit and also different from the largely ministerial task of taxing the traditional items of costs. See Muscare v. Quinn, 614 F.2d 577, 579-80 (7th Cir. 1980).
 
 
 34
 623 F.2d at 33. The court's reference is to that portion of Muscare devoted to determining whether Muscare was a prevailing party-precisely the question presented to the district court by IIT's motion for fees. We are persuaded therefore that the court retained such jurisdiction of the case as was necessary to determine issues essential to the resolution of the fee award controversy. Such a rule does not lead to the danger of piecemeal appeals when the procedures for consolidation of appeals from judgments on the merits and awards of attorneys' fees set out in Terket, 623 F.2d at 34, are followed, as they were here. Furthermore, when the Terket consolidation procedure is followed, the entire question of the propriety of the district court disposition is presented to the appeals court, and there is no possible prejudice to an appealing party.
 
 
 35
 IIT points out that the Terket court specifically prohibited "the sort of reconsideration of the merits which could lead to altering the substantive judgment or in any way interfere with the pending appeal." 623 F.2d at 34. That is correct as an abstract proposition of law, but does not have any bearing on this case. The court's technical amendment of its original order did not alter the substance of the final judgment or the legal relations between the parties. We conclude that the court did have jurisdiction to rule on IIT's standing under the Act, for the purpose of determining whether IIT was a prevailing party.
 
 
 36
 As noted above, the district court ruled that because IIT was not an intended beneficiary of the Act, it lacked standing to assert a private right of action under section 504 of the Act, and was not therefore a prevailing party. On appeal IIT does not argue that it was an intended beneficiary of the Act, but rather that its right to bring a cross-claim against IDRS comes from Fed.R.Civ.P. 13(g). That rule provides that a party can bring as a cross-claim against a co-party any claim arising out of the transaction which is the subject matter of the original suit. It further provides that the cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant under the claim asserted against the cross-claimant in the original action.
 
 
 37
 While Rule 13(g) claims are within the ancillary jurisdiction of the court and do not require an independent jurisdictional basis, Dow Corning Corp. v. Schpak, 65 F.R.D. 71 (N.D.Ill.1974); see 6 C. Wright & A. Miller, Federal Practice & Procedure § 1433 at 177, there are two limits on 13(g) availability. The first is that such a cross-claim must assert a plea for affirmative relief, and not a mere allegation of a complete defense against the opposing party's claim. Washington Building Realty Corp. v. Peoples Drug Stores, Inc., 161 F.2d 879 (D.C.Cir.1947); Paur v. Crookston Marine, 83 F.R.D. 466, 471 (D.N.D.1979); 6 C. Wright & A. Miller, Federal Practice & Procedure § 1431 at 162 & n.73. In this case, IIT's cross-claim constitutes merely such a defense, because, as the district court properly noted, IDRS' duty under section 504 extends only to the plaintiff. IIT therefore cannot have any claim for affirmative relief against IDRS under section 504, and its cross-claim does not fall within the limits of Rule 13(g).
 
 
 38
 The second limit on assertion of a cross-claim under Rule 13(g) is the related requirement that a cross-claim seek relief on behalf of the party asserting it, and not on behalf of a party other than the cross-claimant. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1431 at 162 & n.74. This is in accord with the general requirement that a complainant must assert his own legal interests, rather than those of a third party, to maintain an action in the federal courts. See, e.g., Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).
 
 
 39
 We conclude, therefore, that since IIT's cross-claim was essentially a method of presenting its defense against Jones, and further did not assert its own right to relief under the Act, but rather that of Jones, it did not fall within the bounds of Rule 13(g). IIT further contends, however, that even absent standing to bring its cross-claim, it is a prevailing party within the meaning of the Act because its original position vis-a-vis provision of services to Jones (that IDRS was responsible) has been vindicated.
 
 
 40
 This court and others have recognized that a party may prevail for purposes of an award of attorneys' fees without proceeding to a judgment. See, e.g., Harrington v. De Vito, 656 F.2d 264 (7th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982); Knighton v. Watkins, 616 F.2d 795 (5th Cir. 1980). Those cases have not, however, dispensed with the requirement that one party have a viable claim against another before it can be considered to have prevailed. As noted above, IIT did not have such a claim, and it did not therefore prevail within the meaning of the Act.
 
 
 41
 In accordance with all the foregoing reasons, the decision of the district court is affirmed, with the exception of that portion of the decision denying Jones costs in the amount of $1,000. The decision is therefore
 
 
 42
 Affirmed In Part, Reversed And Remanded In Part.
 
 
 
 *
 Shiro Kashiwa, Associate Judge of the United States Court of Claims, sitting by designation
 
 
 [1]
 Jones also sought relief under the equal protection clause of the 14th Amendment and 42 U.S.C. § 1983. The district court did not reach those claims in light of its holding that Jones could obtain all the relief he sought under section 504. 504 F.Supp. at 1257. Jones has not pressed his constitutional claim in this court
 
 
 [2]
 IIT has not appealed from that portion of the judgment. IIT's cross-claim also sought injunctive relief under § 504 requiring IDRS to provide Jones with interpreter services. The court's original opinion granted that motion, which sought essentially the same relief requested by Jones, but expressly reserved consideration of the question whether IIT had standing to bring suit under section 504. 504 F.Supp. at 1258 n.55. When IIT moved for attorneys' fees, the district court found it necessary to reach the standing question in order to determine whether IIT was a prevailing party, and concluded it did not have standing. It then amended its prior judgment to delete references to a grant of summary judgment to IIT. See further discussion below at IV
 
 
 [3]
 The original responsibility for enforcement of section 504 was delegated to the Department of Health, Education and Welfare. On May 9, 1980, that responsibility was transferred to the Department of Education. 45 Fed.Reg. 30802. The regulations were initially reported by HEW at 45 C.F.R. pt. 84. On May 9, 1980 they were redesignated under Title 34. Our citations are to the current redesignations
 
 
 [4]
 34 C.F.R. pt. 84, App. A at 360 (1981)
 
 
 [5]
 In Schornstein v. New Jersey Division of Vocational Rehabilitation Services, 519 F.Supp. 773 (D.N.J.1981), aff'd, 688 F.2d 824 (3d Cir. 1982) (mem.), the court found that the state VR agency's policy of refusing to provide such services to college students as a class violated Title I of the Act
 
 
 [6]
 IDRS argued before the district court that it was prohibited from providing Jones with interpreter services by sections 101(a)(8), 101(a)(12), and 103(a)(3) of the Act, 29 U.S.C. §§ 721(a)(8), 721(a)(12), and 723(a)(3), and the regulations promulgated thereunder. The gist of IDRS' argument was that those provisions of the Act require the state to provide interpreter services only if a client is ineligible for "similar benefits" under any other program, from other community resources, or other sources. Since Jones is eligible for such benefits from IIT, IDRS contended, it is thereby precluded from providing them. In a scholarly analysis, the district court rejected this argument, concluding that the language of the statute referred only to other VR benefit programs and community resources whose major function is to provide VR services, and did not include institutions of higher education. Because IDRS has not advanced this argument in its brief to this court, we deem it waived, and need not consider whether the trial court's thorough analysis was erroneous
 
 
 [7]
 Jones also sought relief under Title I of the Act, and under 42 U.S.C. § 1983. Because he has obtained all the relief he sought through his section 504 claim, we need not reach the question whether there is a private right of action under Title I of the Act, or under section 1983 to enforce the rights conferred by Title I. See Pennhurst State School v. Halderman, 451 U.S. 1, 28 n.21, 101 S.Ct. 1531, 1545 n.21, 67 L.Ed.2d 694 (1981); Southeastern Community College v. Davis, 442 U.S. 397, 404 n.5, 99 S.Ct. 2361, 2366 n.5, 60 L.Ed.2d 980 (1979); cf. Ryans v. New Jersey Commission for the Blind, 542 F.Supp. 841 (D.N.J.1982) (plaintiff could sue under § 1983 to enforce Title I of the Act)
 
 
 [8]
 Section 794a fee awards are governed by the same considerations controlling in § 1988 actions. See, e.g., Keyes v. New York City Dept. of Personnel, No. 79 Civ. 5786 (S.D.N.Y. Aug. 22, 1980)
 
 
 [9]
 In addition to their claim that the trial court improperly reduced the hourly rates claimed by counsel, Jones contends that the failure of the district court to award a multiplier of one-and-one-half was erroneous. While this court has on occasion allowed the use of such a device in an appropriate case, see, e.g., Kamberos v. GTE Automatic Electric, Inc., 603 F.2d 598 (7th Cir. 1979), such awards are exceptional and must be based on extraordinary circumstances. See, e.g., Bonner v. Coughlin, 657 F.2d 931, 936 (7th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 612, 70 L.Ed.2d 599. When the trial court has not determined that such a multiplier is proper, this court generally will not impose such a procedure