DISABLED IN ACTION OF PENNSYL-VANIA and McElratt, Bruce and Jones, Barbara and Neuman, Jay, on behalf of themselves and all persons similarly situated

v.

PIERCE, Samuel R., in his capacity as Secretary of the United States Department of Housing and Urban Development, Finlayson, Kenneth J., in his capacity as Regional Administrator of Region III of the United States Department of Housing and Urban Development; Ink, Dwight A., in his capacity as Acting Administrator of the General Services Administration; Cordes, George P., in his capacity as Regional Administrator of Region III of the General Services Administration

Appeal of DISABLED IN ACTION OF PENNSYLVANIA, et al.

No. 85–1498.

United States Court of Appeals, Third Circuit.

Argued March 4, 1986.

Decided May 1, 1986.

Stephen F. Gold, (argued), Frank J. Laski, Milton Churchill, Timothy M. Cook, Philadelphia, Pa., for appellants.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Richard J. Stout (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellees.

Before GIBBONS, BECKER, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

The plaintiff, Disabled in Action of Pennsylvania, Inc. (DIAP), appeals from an order of the district court denying its motion for an award of attorney's fees against the United States Department of Housing and Urban Development (HUD) and the General Services Administration (GSA). DIAP sought fees pursuant to section 505(b) of the Rehabilitation Act of 1973, which provides that "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 29 U.S.C. § 794a(b) (1982). Without taking testimony and without an opinion, the district court denied the fee motion. The government defends that ruling (1) on the ground that DIAP was not the prevailing party; (2) on the ground that its position was substantially justified; and (3) on the ground that special circumstances made the award of a fee unjust. We reverse and remand for the determination of an appropriate fee award.

### I.

Early in 1985 HUD planned to move certain of its operations to newly-renovated office space in the Liberty Square Building at 105 South 7th Street, Philadelphia, Pennsylvania. On February 27, 1985 DIAP filed a class action complaint against HUD for declaratory and injunctive relief, con-

tending that HUD was denying the handicapped equal access to this office space in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982). DIAP averred that the handicapped were being discriminated against because: (1) the primary entrance to the Liberty Square Building on 7th Street was inaccessible to and unusable by persons confined to wheelchairs and by persons with mobility disabilities since a flight of steep stairs from the sidewalk to the door blocked their access; (2) the front door and numerous internal doors could not be opened by the disabled because the handles were too difficult to operate; and (3) the elevators in the building were equipped with buttons which were too high, and lacked braille markings and direction indicator bells for the blind. An amended complaint joined GSA, the actual lessee of the building, which was responsible for providing the office space for HUD. DIAP moved for a preliminary injunction compelling the government to develop a plan to eliminate barriers to access by the handicapped.

On the eve of the hearing date on DIAP's motion for a preliminary injunction, the government moved pursuant to Federal Rule Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim on which relief could be granted. The government's legal theory was that accessibility to HUD's offices was governed not by the Rehabilitation Act, but by the Architectural Barriers Act, 42 U.S.C. §§ 4151–4157 (1982). Under that Act, the government contended, DIAP was required to exhaust administrative remedies. Moreover, the government contended, the building satisfied the Uniform Federal Accessibility Standards promulgated under the Architectural Barriers Act.

The district court heard argument on the government's motion to dismiss on March 13, 1985, and denied the motion on March 26. The court held that the Rehabilitation Act provided a remedy in addition to and independent of the Architectural Barriers Act, but that the government was correct in its contention that the Uniform Federal Accessibility Standards applied. Since there existed issues of material fact concerning the government's compliance with those standards the court continued the hearing on DIAP's preliminary injunction motion until March 29.

In the succeeding two weeks the parties negotiated a Stipulation for Compromise and Settlement, which was approved by the district court on April 10, 1985. The Stipulation reserved for future determination DIAP's entitlement to attorney's fees. A fee petition was filed on May 10, 1985. The government filed opposing papers. On July 10, 1985 the district court denied the petition, and entered an order reciting that "(1) litigation was unnecessary" and "(2) [the] government's position was substantially justified—a factor which, even under 29 U.S.C. § 749a(b) (sic), bears on exercise of court's discretion." Joint Appendix 169.

## II.

Section 505(b) provides for an award of attorney's fees to "the prevailing party." Courts that have considered the question have concluded that the language "prevailing party" in section 505(b) means the same thing as the identical language in the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988 (1982). *See Hall v. Bolger*, 768 F.2d 1148, 1151 (9th Cir.1985); *Jones v. Illinois Department of Rehabilitation Services*, 689 F.2d 724, 730 n. 8 (7th Cir. 1982); *Disabled in Action v. Mayor of Baltimore*, 685 F.2d 881, 885 n. 4 (4th Cir.1982); *United Handicapped Federation v. Andre*, 622 F.2d 342, 345–48 (8th Cir.1980).

This court has not yet had occasion to define "prevailing party" under section 505(b). The decisions referred to above, equating "prevailing party" in that section with "prevailing party" in section 1988, however, are consistent with the statement in *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983), that the standards used in section 1988 cases are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'."

Thus we conclude that the case law in this circuit defining "prevailing party" for purposes of section 1988 should be regarded as controlling. That standard, announced in *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979), and restated in *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1166 (3d Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983), is whether the fee petitioner achieved some of the benefit sought by the party bringing the suit. In *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 910–11 (3d Cir.1985), we held that the *Wilmington Medical Center* standard was consistent with *Hensley v. Eckerhart*.

In applying that test our first step is to compare the relief sought with that actually obtained. *Institutionalized Juveniles*, 758 F.2d at 911. Our second step is to determine the causal connection between the relief obtained and the litigation. *Id.* at 910 (citing *Wilmington Medical Center*, 689 F.2d at 1166–70). The plaintiff's lawsuit need not be the sole cause, so long as it is a material factor in prompting the defendant to afford relief. *Wilmington Medical Center*, 689 F.2d at 1169; *Sullivan v. Pennsylvania Department of Labor and Industry*, 663 F.2d 443, 449 (3d Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); *Morrison v. Ayoob*, 627 F.2d 669, 671 (3d Cir. 1980) (per curiam), *cert denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981).

The fact that the relief obtained was the result of a settlement rather than a litigated decree does not prevent a finding that the plaintiff is a prevailing party. *E.g., Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980); *Larsen v. Sielaff*, 702 F.2d 116, 117 (7th Cir.), *cert. denied*, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983); *Mayor of Baltimore*, 685 F.2d at 885–86; *Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir.1982); *Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980) (per curiam), *cert. denied*, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *United Handicapped Federation*, 622 F.2d at 347–48.

Relying on *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978), however, the government urges that when relief has been obtained by way of settlement a more stringent prevailing party test should be applied. We hold, however, that the fact that relief was obtained by way of settlement is only a factor to be taken into account in deciding the second step required by the case law in this circuit; the causal connection between the relief obtained and the lawsuit. A totally frivolous lawsuit which results in the defendant doing no more than it was already committed to do will never satisfy that second step. A lawsuit that has sufficient merit to move the defendant to do more than it was already committed to do will satisfy that step.

As to the first requirement, it is clear on this record that DIAP obtained a great deal of the relief it sought in the complaint. In the Stipulation approved by the court, GSA agreed: 1) to install treadle-operated, automatically-opening doors at the 7th Street entrance; 2) to install a ramp with handrails or a wheelchair lift at the 7th Street entrance; 3) to lower one public telephone in the lobby to a height that would accommodate the handicapped; and 4) to install audible direction indicators on the elevators.

The second requirement—causal connection—is on this record satisfied as well. It was the government's position in the district court, and remains so here, that it was fully in compliance with the Rehabilitation Act because it had already provided a ramp for the handicapped at an entrance to the building on Sansom Street. The government concedes that prior to the lawsuit it had no intention of providing the handicapped access through the building's principal entrance on 7th Street. Brief for Government at 6. Moreover the government has never claimed that prior to the lawsuit it intended to install a telephone that would be accessible to the handicapped in the lobby. At most it claims, and DIAP disputes, that the elevators were already

equipped with audible direction indicators for the blind. Brief for Government at 7. Thus the government's argument really is not directed to the causal relationship between the lawsuit and the relief agreed to in the Stipulation. Rather it argues that no fee should be awarded because the agreement to provide access for the handicapped at the building's main entrance was "gratuitous." DIAP obtained more relief, in other words, than the class it represented was legally entitled to obtain. That contention has nothing to do with the causality prong of this circuit's test for determining who is a prevailing party. What is significant for that prong of the test is that the lawsuit caused the government to provide access for the handicapped at the building's main entrance and to make other services and facilities accessible to the handicapped.

The government's contention that the relief it agreed to in the Stipulation was entirely gratuitous is, in any event, without merit. The Uniform Federal Accessibility Standards for entrances, elevators, and public telephones apply to the Liberty Square Building. *See* 41 C.F.R. Ch. 101, App.A., Subpt. 101–9.6 (1985). Under section 4.1.2(8) the government must provide "[a]t least one *principal* entrance at each grade floor level to a building." *Id.* § 4.1.2(8) (emphasis supplied). Principal entrance is defined as "the main door through which most people enter." *Id.* § 3.5. The government concedes that the Sansom Street entrance does not satisfy this definition. Entrances must be connected to the sidewalk by an accessible route. *Id.* § 4.14. Stairs such as those at the 7th Street entrance may not be part of an accessible route. *Id.* § 4.3.8. Section 4.10.4 requires that elevators have audible direction indicators. *Id.* § 4.10.4. The lowering of one telephone to a height accessible to the handicapped is required by sections 4.31, 4.2.5 and 4.2.6. *Id.* §§ 4.31, 4.2.5, 4.2.6. Thus it is quite clear that what the government agreed to in the Stipulation was required by the Uniform Federal Accessibility Standards, and therefore was not gratuitous.

 The government's next argument is that DIAP is not entitled to fees because, even if it was the prevailing party, the government's position was "substantially justified." Its position in the litigation was not justified at all, for its motion to dismiss was denied and thereafter it settled. Its position that it need not have provided access for the handicapped at the principal entrance to the Liberty Square Building is inconsistent with the governing Uniform Federal Accessibility Standards. Thus the contention that the government's position was substantially justified is hardly a strong one. It need not concern us, however, because the "substantially justified" factor is not found in section 505(b) of the Rehabilitation Act or in the Civil Rights Attorney's Fee Awards Act, the provisions of which are identical. That standard is found only in the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982), which permits an award of fees against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." We decline the government's invitation to rewrite section 505(b) by inserting in it the Equal Access to Justice Act standard. Thus we find the government's reliance on *Dougherty v. Lehman*, 711 F.2d 555 (3d Cir.1983), an Equal Access to Justice Act case, to be misplaced.

 The government's final argument is that in this case special circumstances dictate that DIAP be denied fees. The simplicity of the case is not such a special circumstance. *See Staten v. Housing Authority*, 638 F.2d 599, 605 (3d Cir.1980). The DIAP suit clearly was a catalyst for the vindication of access rights of the handicapped. *See Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir.1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). No circumstances shown in this record suggest that an award would be unjust. *See Skehan v. Board of Trustees*, 590 F.2d 470, 496 (3d Cir.1978) (citing S.Rep. No. 101, 94th Cong.2d Sess. 4, *reprinted in* 1976 U.S.

Code Cong. & Ad.News 5908, 5912), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). These cases interpreting the Civil Rights Attorney's Fees Awards Act are controlling for the identically worded section 505(b).

### III.

We hold, therefore, that the court erred in denying DIAP's petition for an attorney's fee award pursuant to section 505(b) of the Rehabilitation Act. Moreover, DIAP is entitled to an award of fees for the services of its attorneys in pursuing this appeal. That amount shall be determined by calculating the lodestar amount with no multipliers. That calculation shall be made by the district court on an appropriate application by DIAP. The order appealed from will be reversed and the case remanded for proceedings consistent with this opinion.