In re ST. MARY HOSPITAL, Debtor.

**NORRIS SQUARE CIVIC ASSOCIATION, et al.,
Appellants,**

v.

**ST. MARY HOSPITAL, et al., Appellees.**

**Bankruptcy No. 88–114215.
Adv. No. 88–05655.
Civ. A. No. 89–2697.**

United States District Court,
E.D. Pennsylvania.

Oct. 4, 1990.

---

Henry Sommer, Richard Weishaupt, C.L.S., Inc., Philadelphia, Pa., for Community plaintiffs.

Stephen Gold, Philadelphia, Pa., for Elected Official plaintiffs.

James O'Connell, Philadelphia, Pa., for U.S. Trustee.

Virginia Powel, Asst. U.S. Atty., Mark J. Packel, Gary Shildhorn, Philadelphia, Pa., for Creditors Committee.

David Fishbone, Philadelphia, Pa., for trustee.

David Marion, Natalie D. Ramsey, Philadelphia, Pa., for FHS and Aldrich.

Daniel Farmer, Philadelphia, Pa., for doctors.

Seymour Kurland, City of Phila., Rm. 1520 M.S.B. Bld., Phila., Pa.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this adversary bankruptcy proceeding[1], plaintiffs' counsel seek substantial attorneys' fees under 42 U.S.C. § 1988 and 11 U.S.C. §§ 503(b)(3)(D) and (b)(4). The bankruptcy court held that neither statute afforded the relief requested. *In re St. Mary Hospital,* 97 B.R. 199 (Bankr.E.D.Pa. 1989) ("*St. Mary II*"). Before me is the appeal of the order denying attorneys' fees. I will affirm the judgment of the bankruptcy court.

St. Mary Hospital, acting through its parent entity, Franciscan Health Services, Inc. ("FHS"), filed for Chapter 11 bankruptcy protection on April 27, 1988. On that date FHS announced its "Operational Plan" to close the emergency room on April 29, 1988, at 11:00 p.m., and to close the hospi-

tal in its entirety shortly thereafter. Four doctors affiliated with St. Mary then filed a motion in the bankruptcy court to enjoin St. Mary from proceeding with the operational plan and to request the appointment of a trustee to review the plan. The United States Trustee filed a motion for appointment of a trustee. The City of Philadelphia and the appellants filed adversary complaints also seeking to enjoin the closing of the hospital and later filed motions for the appointment of a trustee. Judge David A. Scholl granted the motions to enjoin "on a temporary basis," pending a more complete hearing on May 4, 1988. *In re St. Mary Hospital,* 86 B.R. 393 (Bankr. E.D.Pa.1988) ("*St. Mary I*").

At the hearing, FHS, the doctors, and the appellants presented testimony concerning the effect of the planned termination of operations, the reasons why FHS developed the operational plan, and the alternatives to closure. In response to the testimony and the requests of the doctors and the United States Trustee, Judge Scholl appointed an examiner. *St. Mary II,* 97 B.R. at 200.

Appellants' second amended adversarial complaint asserts that closing the hospital would violate: (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, because it would have a disparate impact on minorities; (2) the Hill–Burton Act, 42 U.S.C. § 291(a), because it would eliminate a source of free medical care in the surrounding community; (3) a state statute, 28 Pa.Code § 101.196,[2] because the hospital did not provide the state Department of Health with a written notice of an intent to close until April 28, 1988; and (4) a Philadelphia health regulation, because the St.

---

1. The adversary complaint purports to maintain the proceeding as a class action on behalf of "all low-income persons residing in or working in the geographical area served by St. Mary Hospital who have been or will be adversely affected by the closing of the St. Mary Hospital Emergency Room." No request was ever made for certification of this purported class. The named plaintiffs in the adversary proceeding include five community groups, five individuals, three Philadelphia councilmen, and a state representative. The public officials were represented by Stephen F. Gold, Esquire, and the other plaintiffs were represented by Community Legal

Services, Inc. The named plaintiffs in the adversary proceeding are the appellants here and for the sake of brevity I will refer to them collectively as "appellants." St. Mary Hospital, Franciscan Health Services, Inc., and Ronald R. Aldrich were named as defendants in the adversary complaint.

2. Section 101.196 provides that "a hospital shall give written notice of an intent to close to the Department, not later than 90 days prior to the anticipated closing date."

Mary did not receive written authorization to close its emergency room. The city contended that the operational plan would violate a provision of a contract between it and St. Mary concerning the operation of a women's and infants' care program in the hospital.

On May 9, 1988, Judge Scholl issued an opinion in which, *inter alia*, he enjoined St. Mary from taking any further action to close the hospital or discontinue emergency room services. He stated that the relief granted was solely on the basis of his finding that the doctors' claim that FHS did not explore adequately the alternatives to closing St. Mary had merit, that the city's claim that closing of St. Mary would be a breach of its contract with the city had merit, and that appellants' and the city's claim that St. Mary did not receive written authorization from the city to close had merit. *St. Mary I*, 86 B.R. at 397. As for the appellants' remaining claims arising under the civil rights laws, Judge Scholl:

> question[ed] whether there has (sic) been any violations of either Title VI of the Civil Rights Act or the Hill–Burton Act which would justify our intervention. There is no question that there will be a disparate impact upon minorities as opposed to whites if the debtor [St. Mary] closes its facility, and Hill–Burton obligations, of which the community is the beneficiary, will obviously go unmet. However, we perceive nothing in either federal Act which would require a facility within the scope of these Regulations to remain open to insure that patients' rights under these Acts are preserved. As we have learned from the ultimately unsuccessful attempt of community forces to prevent the relocation of the Wilmington Medical Center from a needy, low-income community into the suburbs, *see N.A.A.C.P. v. Medical Center, Inc.*, 657 F.2d 1322 (3d Cir.1981), there are distinct limitations upon the managerial decisions of hospitals which courts can effect (sic).... Therefore, we fail to see how these laws provide a cause of action to the adversary plaintiffs.... Further, there is the difficult issue of the plaintiffs' standing to raise these issues, even if we concluded that these laws created rights relevant here.... [T]he adversary plaintiffs, unlike the doctors, are not creditors or agents of the Debtor, and may have difficulty meeting the definition of interested parties.

*Id.* at 398–99.

A trustee was eventually appointed following a review of the examiner's report. A plan of reorganization was developed in which it was proposed that St. Mary be sold to and operated by a third party. A reorganization plan incorporating these changes has been approved by Judge Scholl.

Appellants moved for attorneys' fees pursuant to 42 U.S.C. § 1988 [3] and 11 U.S.C. §§ 503(b)(3)(d) and (b)(4) [4]. Judge Scholl denied the motion on both grounds. *St. Mary II*, at 206. He found that section 1988 could not be a basis for an award of fees in that appellants did not prevail on any of their civil rights claims, were not "prevailing parties," based on the success of one of their statutory claims, and did not act as catalysts to prevent the closing of

---

3. Section 1988 provides in part that:
   In any action or proceeding to enforce a provision of ... Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

4. Section 503 provides in pertinent part:
   (b) After notice and hearing, there shall be allowed, administrative expenses, ..., including— ...
   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by— ...

   (D) a creditor, ... making a substantial contribution in a case under chapter ... 11 of this title;
   (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

St. Mary. *Id.* Additionally, he rejected the claim under sections 503(b)(3)(D) and (b)(4), because appellants were not creditors within the meaning of the statutes. *Id.* at 204. On appeal, I will affirm the reasoned judgment of the bankruptcy court and deny attorneys' fees to the appellants.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). An award of reasonable attorneys' fees under section 1988 or sections 503(b)(3)(D) and (b)(4) is within the discretion of the bankruptcy court. The district court may reverse a denial of attorneys' fees only if the bankruptcy court abused its discretion by using improper standards or procedures in determining fees, improperly identified the criteria used for such a determination, or based its decision on facts that are clearly erroneous. *Tunstall v. Office of Judicial Support,* 820 F.2d 631, 633 (3d Cir.1987); *In re Metro Transportation Co.,* 107 B.R. 50 (E.D.Pa.1989). The district court may affirm the decision of the bankruptcy court on any basis that finds support in the record. *Tunstall,* 820 F.2d at 633.

*Prevailing Party under Section 1988*

■ Section 1988 provides for attorneys' fees to the "prevailing party" in a civil rights action. The standard used in the Third Circuit for determining a plaintiff's prevailing party status is whether he achieved "some of the benefit sought" by his action. *NAACP v. Wilmington Medical Center, Inc.,* 689 F.2d 1161, 1167 (3d Cir.1982), *cert. denied,* 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983). *See also Disabled in Action of Pennsylvania v. Pierce,* 789 F.2d 1016, 1019 (3d Cir.1986). The first step in applying that test is to compare the relief sought with that actually obtained. *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 911 (3d Cir.1985). Here, there is no dispute that appellants, for the most part, received the relief they sought. Appellants, along with many other parties, requested an injunction and an injunction was entered. A trustee was requested and one was appointed to oversee the hospital. The ultimate goal to keep St. Mary a going concern has been reached.

However, the second step is the one on which the fee petition founders. The second step requires that there be a causal connection between the relief obtained and a claim on which a fee may be awarded. *Id.* at 910. Here, counsels' problem is that appellants did not succeed in the bankruptcy court on a section 1988 theory of recovery, *i.e.,* one that would support an award of attorneys' fees under section 1988. Specifically, Judge Scholl rejected the two civil rights claims the appellants advanced and only afforded relief on the claim that St. Mary had not received written authorization from the City to close, a claim that does not authorize fee-shifting, *i.e.,* is a "non-fee" claim. *St. Mary I,* at 398–99, 400. In that situation, as Judge Scholl correctly noted, the Supreme Court's decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), is instructive. In *Smith,* the fee petitioners prevailed only on state law and federal statutory claims, non-fee claims, while the district court declined to reach the constitutional claims, which if successful would have afforded plaintiff attorney's fees. *Id.* at 1001, 104 S.Ct. at 3462–63. The Court stated that under those circumstances, "[d]ue regard must be paid, not only to the fact that plaintiff 'prevailed,' but also to the relationship between the claims on which effort was expended and the ultimate relief obtained." *Id.* at 1006, 104 S.Ct. at 3465. Thus, the Court cautioned, "fees are not properly awarded for work done on a claim on which a plaintiff did not prevail and which involved distinctly different facts and legal theories from the claims on the basis of which relief was awarded." *Id. See also Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). The Court denied an award of attorneys' fees.

Appellants' unsuccessful civil rights claims [5] involve different facts and are

---

**5.** Appellants contend rather vociferously that their civil rights claims were not unsuccessful or without merit as Judge Scholl found, *St.*

*Mary II* at 200. Appellants spend a great portion of their briefs in support of their petition for attorneys' fees on the issue of whether the

based upon different legal theories than their successful non-fee claim. It is true that all of the appellants' claims arise initially out of the planned closing of the hospital; however, the similarities end there. The civil rights claims concern the impact that the planned closing would have on the surrounding community, while the non-fee claim concerns the required procedures St. Mary should have followed to permit its closing. Thus, the focus is on a different set of facts, those involving post-closing effects and those involving pre-closing decision-making and procedures. In other words, the civil rights claims must be examined based on facts revealing the effect the closing of the hospital would have on the community. The municipal regulatory claim only depends on the facts revealing the steps taken prior to the planned closing of the hospital. The legal theories are also distinct. This distinction can be clearly seen if one assumes that St. Mary had received written authorization from the City to cease operations. If that were the case, the non-fee claim would be moot, but the civil rights claims would remain viable. Appellants have not convinced me that Judge Scholl erred in his conclusion that there is not a sufficient relationship between the non-fee claim and the civil rights claims to support an award of fees.

Even if I were to find that there was a relationship between appellants' successful and unsuccessful claims, *Smith* and *Hensley* would not permit me to overturn Judge Scholl's reasoned decision. The *Smith* court stated that "where it is clear that the claims that provide for attorney's fees had nothing to do with plaintiff's success, *Hensley v. Eckerhart, supra* [461 U.S. at 435–36, 103 S.Ct. at 1940–41], requires that fees not be awarded on the basis of those claims." *Smith* at 1009 n. 12, 104 S.Ct. at

3467 n. 12. Judge Scholl could not have been more clear. He opined that the civil rights claims asserted by the appellants "played no role whatsoever in the ultimate disposition of this case," *St. Mary II* at 200, "had no bearing on our subsequent decisions in this case," *id.* at 205, and "were not at all significant in the course that this case took," *id.* at 206. I cannot disturb Judge Scholl's finding that the civil rights claims were not related to his decision to appoint an examiner and enjoin the closing of the hospital.

In an effort to avoid the rather straightforward application of *Smith* to the facts of this case, appellants argue that they are entitled to attorneys' fees under the "catalyst theory," a theory not addressed by nor at issue in *Smith*. The Third Circuit has adopted the "catalyst theory," which permits an award of fees when plaintiffs can "establish that their suit was the catalyst for the changes." *Clark v. Township of Falls*, 890 F.2d 625, 627 (3d Cir.1989). *See, e.g., Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). However, the applicable test under the catalyst theory is really no different than the routine determination of whether a party prevails on his claims. Regardless of whether the appellants seek fees under the catalyst theory or the generally-accepted prevailing party formulation, they must still meet the " 'statutory threshold' of significance and causation." *Clark*, 890 F.2d at 627 (quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939). Therefore, appellants must prove that their civil rights claims were a significant issue in the litigation and caused Judge Scholl to enter his order enjoining the closing of the hospital and appointing an examiner.[6] As I outlined above, appel-

---

civil rights claims had merit. This effort has been in vain. The relevant issue is not whether Judge Scholl was correct in stating that the claims were without merit, but whether there is a causal connection between their claims, meritorious or not, and the relief obtained. Judge Scholl's factual finding that there was no connection is not clearly erroneous, so it must be upheld.

6. Appellants contend that I should focus on the entire litigation as opposed to the individual causes of action within it to decide the merits of a fee petition under the catalyst test. Were I to adopt this focus, the applicable test would become whether the complaint containing both successful and unsuccessful claims raised significant issues and whether the results obtained were caused by the filing of the complaint and the prosecution of the case. Appellants fair no

lants cannot prove either. Judge Scholl's decision to grant injunctive relief and appoint an examiner was not influenced by the presence of appellants' civil rights claims. He opined that "it is safe and accurate to assume that these claims had no bearing on our subsequent decisions in this case. The 'catalyst' theory assumes, at bottom, that a plaintiff's Civil Rights Act claims had *some* impact on the final result achieved the [by] the party advancing same. Here, we can unqualifiedly state that these claims had *no* impact on our decisions on May 9, 1988, or thereafter, which led to what the Plaintiffs [appellants] believe was a result favorable to their interests." *St. Mary II* at 205. (emphasis in original). Judge Scholl's finding that appellants were not catalysts is well-grounded in law and is not clearly erroneous. Accordingly, no fees may be awarded to counsel for appellants pursuant to section 1988 under the circumstances.

*Fees under Sections §§ 503(b)(3)(D) and (b)(4)*

■ Sections §§ 503(b)(3)(D) and (b)(4) provide for attorneys' fees to "creditors" who make a "substantial contribution" to the bankruptcy case. As a threshold matter, appellants must show that they fall within the "creditor" definition. The term "creditor" as it is used in this context must be strictly construed. *In re Jennings, Inc.*, 67 B.R. 106, 109–110 (Bankr.E.D.Pa. 1986). For guidance as to what the term means, I will turn to 11 U.S.C. §§ 101(4)(A) and (B) and (9)(A). Subsection (9)(A) defines a "creditor" as an "entity that has a claim against the debtor that arose at the time or before" the filing of the bankruptcy petition. A "claim," under section 101(4)(A) and (B), is a:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or ... [a] ... right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

Appellants cannot meet the creditor threshold.

■ There has been no allegation that any of the named plaintiffs or any other member of the purported class would have held a right to payment from the debtor if the hospital had remained open, or for that matter, if it had closed.[7] At best, the named plaintiffs would have held, as would any other member of the purported class, a right to a disputed equitable remedy for the violation of a municipal regulation, a federal statute, and Title VI. Appellants did not nor could they assert that these alleged violations entitled them to a right to payment, *i.e.*, money damages. Title VI, for example, does not make money damages available for individuals who have suffered discriminatory treatment under a federally funded program. *Davis v. Spanish*

---

better under this expanded test. Once again, Judge Scholl made it very clear that the appellants' adversary complaint had very little to do with his decisions. In particular, Judge Scholl stated that "the ultimate direction of the case was not established until we received the report of the Examiner on May 13, 1988, and not by reason of any of the claims asserted in the adversary proceeding." *St. Mary II* at 201. Appellants argue that they were instrumental in getting the examiner appointed so they must be responsible for his successful efforts in preventing the closing of the hospital. However, Judge Scholl appointed the examiner, not because of the efforts of the appellants but "in partial response to the request of the Doctors and the UST [United States Trustee] for appointment of a Trustee." *Id.*

7. In their reply, appellants assert that three of the named plaintiffs filed, albeit well-after the bankruptcy court proceedings which are in issue here, timely proofs of claims for money damages "arising from pre-petition violations of the civil rights laws." Appellants did not provide me with any more information relating to these claims. I have no idea if these claims arose out of the same alleged civil rights violations that form part of appellants' adversary complaint. I will not speculate about the relationship, if any, between the adversarial complaint and the proofs of claim filed by three of the named appellants. Had the claims been related, I am sure that I would have been informed of that fact.

*Coalition for Jobs, Inc.*, 676 F.Supp. 171, 172 (N.D.Ill.1988). As section 101(4)(B) states, a claim will not lie where the right to an equitable remedy does not give rise to a right to payment. No identified plaintiff in the adversary action holds a right to payment from St. Mary or from any of the defendants.

Assuming, *arguendo*, that appellants have claims against St. Mary, they cannot, however, show that those claims arose before St. Mary filed its bankruptcy petition.[8] The claims asserted by appellants did not arise until St. Mary announced its intention to close the emergency room and the entire hospital thereafter, which it did *after* it filed its bankruptcy petition. Appellants contend that their claims arose not from the date that the hospital closing was announced but from the date the St. Mary directors and FHS decided to put the operational plan into effect, a date *before* the petition was filed. In an analogous situation, the Third Circuit refused to accept that pre-petition acts by the debtor, by themselves, are controlling. *Matter of M. Frenville, Inc.*, 744 F.2d 332, 335 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). In *Frenville*, the court ruled that the automatic stay provisions of the bankruptcy code would not be applicable unless the plaintiff "could have proceeded with its suit before the bankruptcy petitions were filed ... or had a claim against the ... [debtor] ... which arose before that date." 744 F.2d at 335. The same reasoning applies to this action. Appellants could not have filed their complaint until the announcement was made. No harm was threatened prior to that time. Similarly, no claim would have been viable before the announcement. Judge Scholl's decision that appellants' claims arose post-petition, *St. Mary II* at 203, is not clearly erroneous and will not be disturbed.

*Conclusion*

Judge Scholl's order denying attorneys' fees to appellant will be affirmed. Appel-

lants were not prevailing parties under 42 U.S.C. § 1988 jurisprudence, despite the limited success of one of their claims in the adversary complaint. They did not succeed on any claim which would afford them the right to seek attorneys' fees. The civil rights claims they asserted would have supported an award of attorneys' fees; however, those claims did not result in or play a material role in Judge Scholl's decision to enjoin the closing of St. Mary and to appoint a trustee. Similarly, appellants' contention that Judge Scholl erred when he denied attorneys' fees under 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) is without merit. Appellants have not sustained the burden that they are creditors entitled to seek attorneys' fees within the meaning of the bankruptcy code.

---

8. As I noted above, *supra* at 30 n. 7, three of the named plaintiffs now assert that they filed proofs of claim for money damages arising from "prepetition violations of the civil rights laws." The nature of these claims is not explained. I will not speculate on the nature of these claims so as to relieve appellants the burden of showing that Judge Scholl's finding that "none of the named plaintiffs contended that they were owed any sums by the Debtor at the time of filing [of the petition]," *St. Mary II* at 202, is clearly erroneous.