# Illinois Official Reports

## Appellate Court

*Williams v. Department of Human Services Division of Rehabilitation Services*,
2019 IL App (1st) 181517

| | |
|---|---|
| Appellate Court Caption | TODD WILLIAMS, Plaintiff-Appellant, v. THE DEPARTMENT OF HUMAN SERVICES DIVISION OF REHABILITATION SERVICES, Defendant-Appellee. |
| District & No. | First District, Third Division No. 1-18-1517 |
| Rehearing denied Opinion filed | October 10, 2019 November 6, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-0016450; the Hon. Diane Joan Larsen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Todd Williams, of Park Forest, appellant *pro se*. Kwame Raoul, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Caleb Rush, Assistant Attorney General, of counsel), for appellees. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Todd Williams, *pro se*, who has a disability that qualifies him for vocational rehabilitation services from defendant, Division of Rehabilitation Services of the Department of Human Services, requested $81,138 in 2016 in order to start a home-based instructional video business. The agency denied Williams's request. When Williams appealed, an administrative hearing officer affirmed the agency's denial, and when he further appealed, the circuit court affirmed the final administrative decision. The circuit court also denied Williams's motion to be appointed with legal counsel. Now in the appellate court, Williams asks that we reverse the hearing officer's decision, "repeal about 18" sections of the Illinois Administrative Code as inconsistent with his federal rights, and order that an attorney come to his assistance on remand. The agency responds that Williams did not meet the requirements of the vocational rehabilitation program and that there are no grounds to grant his request for legal representation.

¶ 2    Williams, of Park Forest, Illinois, is in his mid-fifties, has an undergraduate degree in math, and has a graduate degree in business administration. Williams has been a client of the division "on and off since year 1990" due to an impairment that interferes with his ability to obtain or retain employment. The record does not disclose the nature of the disability. The agency provides vocational rehabilitation services to eligible persons pursuant to the Rehabilitation of Persons with Disabilities Act (20 ILCS 2405/0.01 *et seq.* (West 2016)), state regulations for implementing the program, and the federal Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.* (2012)).

¶ 3    The federal provisions indicate that when a person is eligible for services, the person and his or her rehabilitation counselor are to create a written plan known as an "individualized plan for employment" or "IPE" which outlines the person's vocational goal and the services to be provided to reach that goal. 29 U.S.C. § 722(b)(4) (2012); 34 C.F.R. § 361.48 (2016). The IPE must be consistent with the client's "unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice" and must be "approved" by a qualified vocational rehabilitation counselor and "agreed to" by the client. 29 U.S.C. §§ 722(b)(4), 722(b)(3)(C) (2012).

¶ 4    Consistent with the federal statutes and regulations, Illinois requires that individuals must establish an IPE before the agency can provide vocational rehabilitation services (89 Ill. Adm. Code 590.20 (2012)) and that persons who are interested in self-employment meet additional requirements in order to become eligible for that program. Interested individuals must complete a questionnaire that aids in determining whether self-employment is viable. 89 Ill. Adm. Code 590.20, 590.315(b) (2012). Individuals interested in self-employment must also provide "evidence that the proposed business has a reasonable chance of success (*i.e.*, provide net income to meet a majority of the customer's living expenses)." 89 Ill. Adm. Code 590.320(a) (2012). Another requirement is the creation of a detailed business plan that includes financial estimates of the total capital needed to establish the business. 89 Ill. Adm. Code

590.320(a) (2012). The applicant must provide evidence of his or her cash or credit resources, "*i.e.*, personal account statements [and] verification of loan availability," that demonstrate the person's ability to cover costs that will not be paid by the agency. 89 Ill. Adm. Code 590.320(a)(3) (2012). The applicant's evidence must show that he or she can pay 50% of eligible costs and pay all costs beyond the agency's maximum contribution of $10,000. 89 Ill. Adm. Code 590.315(b)(4), (b)(5) (2012); see also 89 Ill. Adm. Code 590.320(c) (2012). The bureau chief may, but is not required to, grant exceptions to the agency's contribution limit. 89 Ill. Adm. Code 590.320(c) (2012). Once all of the preliminaries are met and "the customer, counselor and the Supervisor" have determined "that self-employment is a realistic employment goal for the individual," the agency may provide "[t]ools, equipment, supplies and initial stock necessary to begin a specific business." 89 Ill. Adm. Code 590.320(b) (2012). The agency, however, can never provide "cash for establishing a business." 89 Ill. Adm. Code 590.330(a) (2012).

¶ 5        In addition to these resources, the agency will pay "up to 100% of any Program for Self-Employment cost associated with accommodating the customer's disability." 89 Ill. Adm. Code 590.320(d) (2012). See, *e.g.*, *Jones v. Illinois Department of Rehabilitation Services*, 689 F.2d 724 (7th Cir. 1982) (deaf student who qualified for financial assistance with college tuition, books, and room and board was entitled to 100% of the costs of the interpreter services needed to accommodate his hearing disability).

¶ 6        In early 2016, Williams filed a new application with the Illinois vocational rehabilitation program in which he asked for resources to start a business creating and marketing instructional DVDs. Although Williams does not have a law degree, he proposed giving advice on "how to do your own divorce" and "how to file bankruptcy." His third instructional topic was "how to do your own auto repairs." Williams's request for $81,138 in cash included $3067 for the purchase of a "Camcorder," camera tripod, and related equipment; $36,000 for a "TV commercial"; $5000 for a "Call Center"; and $22,000 for a vehicle to be used as his transportation (not as the subject of his automobile repair video). Williams made clear that he had no resources to contribute to his proposed enterprise.

¶ 7        The agency denied the application, citing the agency regulations requiring Williams to contribute some of the funding and prohibiting the agency from providing cash to establish a business or more than $10,000 in resources. The agency advised Williams that in order to support his proposal to begin a business that required $81,138, "You must provide evidence of $71,138 in resources to cover the expense over the $10,000 [limit]," or that he could submit a scaled back plan that nevertheless indicated he could cover 50% of the eligible costs and that the agency would contribute no more than $10,000 in resources.

¶ 8        Williams asked for an exception to the state regulations, which the bureau chief denied.

¶ 9        Williams then administratively appealed in mid-2016. He and his rehabilitation counselor submitted written exhibits to the administrative hearing officer and testified during a hearing convened in October 2016. The agency's written submissions included Williams's application and the agency's internal e-mails about the request. In his written submissions to the hearing officer, Williams contended that his 2016 application corrected defects that a hearing officer identified in Williams's previous application for resources to start an instructional video enterprise. Williams contended that the various state regulations, which capped the agency's contribution toward a self-employment plan at $10,000, required that he pay 50% of the costs,

and imposed other terms, were inconsistent with federal requirements for vocational rehabilitation services.

¶ 10　　At the start of the telephonic hearing, the hearing officer reminded Williams that as the petitioning party, he bore the burden of proving that the defendant agency had erroneously denied his application:

> "ADMINISTRATIVE HEARING OFFICER: Let me explain how the hearing will proceed. Mr. Williams you have the responsibility to prove by the preponderance of the evidence that the action or inaction by DRS [(Division of Rehabilitation Services)] was not in accordance with federal or state laws or regulations[,] against DRS policy, not in accordance with your plan[,] or inappropriate for you.
>
> TODD WILLIAMS: Okay, I want to add that I received from the bureau of administrative hearings in the mail *** your procedures and it states in there a set of regulations, 29 U.S.C. 722, and within that federal regulation that they said that the [agency] is supposed to *** only consider state policies and regulations that are consistent with federal requirements.
>
> ADMINISTRATIVE HEARING OFFICER: Okay, so do you have a question?
>
> TODD WILLIAMS: No, no, no, no, I just wanted to bring that up for the record.
>
> ADMINISTRATIVE HEARING OFFICER: Okay, then did you have a point?
>
> TODD WILLIAMS: Well, *** it says that *** most of the burden of proof is on me but, one of the federal requirements is that the [agency] cannot arbitrarily put any limitations on the nature or scope of rehabilitation services. And *** it says whatever reason they give cannot be arbitrary.
>
> ADMINISTRATIVE HEARING OFFICER: Okay.
>
> TODD WILLIAMS: So, would that not kind of like shift part of the burden over to them?
>
> ADMINISTRATIVE HEARING OFFICER: No.
>
> TODD WILLIAMS: Okay.
>
> ADMINISTRATIVE HEARING OFFICER: No, because it's your burden to prove that their action was incorrect.
>
> TODD WILLIAMS: Okay, but, what if they don't have a reason to *** not provide [or] put any limitations on *** the scope of my services?
>
> ADMINISTRATIVE HEARING OFFICER: Then you have to show that that was incorrect.
>
> TODD WILLIAMS: Okay.
>
> ADMINISTRATIVE HEARING OFFICER: They don't have to show that it was correct, you have to show that it was incorrect.
>
> TODD WILLIAMS: Right, but, arbitrary means general or does not apply to me specifically, doesn't it?
>
> ADMINISTRATIVE HEARING OFFICER: It's—you have to prove by a preponderance of the evidence that their action was incorrect.
>
> TODD WILLIAMS: Okay."

¶ 11　　A considerable portion of the hearing was devoted to dispelling Williams's belief that his self-employment application to the program in 2009 (which had proceeded to appellate court

review in 2014) had any bearing on his 2016 application. The hearing officer indicated that the time had long since passed for anyone to address or rely on the previous, rejected application and that the current proceedings and her jurisdiction were limited to the current application. Williams, however, said little about his new application, other than stating that the hearing officer should "read and try to understand everything" in Williams's written submission because Williams "might not be able to state all I need at the hearing." Williams, for instance, did not present any testimony or evidence regarding his disability or his vocational rehabilitation needs. He also gave no indication of how his request for funds to start a home-based business related to his disability or his vocational rehabilitation needs. Williams contended that he was seeking vocational rehabilitation services, but when the hearing officer asked what vocational rehabilitation services he was requesting, Williams answered by citing a federal regulation, 34 C.F.R. § 361.48. When the hearing officer asked again, Williams responded, "Everything, everything I need." The federal regulation that Williams referred to outlines the "[s]cope of vocational rehabilitation services [to be made available to] individuals with disabilities" including vocational rehabilitation counseling and guidance, training (*e.g.*, training in science, technology, engineering, mathematics, medicine, law, or business), and job search and placement assistance. 34 C.F.R. § 361.48 (2016). As we outlined above, according to the federal regulation, the individual and his or her rehabilitation counselor are required to first create an IPE, which outlines the individual's vocational goal and the services that are provided to reach that goal and which are subsequently made "available," must be "appropriate" to the individual's needs, and must be "consistent with the individual's unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice." 34 C.F.R. § 361.48 (2016).

¶ 12    The rehabilitation counselor's testimony confirmed that Williams was eligible for vocational rehabilitation services based on a disability. The counselor testified that an IPE, regardless of the objective, would have to be in place and services agreed upon before the agency could provide services. There was, however, no IPE on file for Williams because he proposed a self-employment plan without showing that he had the financial resources to cover his share of the costs above the $10,000 maximum amount that the agency could contribute toward a self-employment plan, and the bureau chief did not grant Williams's request for an exception to the agency's policies. The counselor pointed out that self-employment is a desired "employment outcome" rather than a vocational rehabilitation service that could be provided by the agency, such as job placement assistance. The counselor testified that she followed state regulations and that the regulations were consistent with federal regulations.

¶ 13    After taking the matter under advisement, the hearing officer issued a written decision, which affirmed the agency's decision. The hearing officer outlined that an IPE was required and that Williams had not obtained one because his business employment plan was not given an exception to the various rules that required him to contribute some of the resources. In addition, Williams failed to show that he was requesting any vocational rehabilitative services, as opposed to simply cash, and the agency's regulation prohibited it providing cash. Because Williams had not met his burden of showing that the decision was incorrect, the hearing officer affirmed the decision as correct.

¶ 14    Later in 2016, Williams filed a complaint and amended complaint in the circuit court seeking review of the hearing officer's decision. He next asked the agency's Client Assistance Program (CAP) to provide an attorney to represent him in the circuit court proceedings. Further

below we will provide more details about the CAP program because CAP's involvement is one of the issues on appeal. For the time being, we note that CAP denied Williams's request in a letter dated March 29, 2017, because Williams had already been through the administrative appeal process and CAP "is mandated to resolve problems at the lowest possible level." CAP also said the "decision on what advocacy we will provide depends on the facts of the case and [federal, state, and department] rules [and policies]." CAP reiterated, "Should you require CAP services in the future, we would be more than happy to assist you starting at the lowest level of intervention." Williams then motioned the circuit court to require CAP to provide an attorney to represent him in the circuit court proceedings, but the court denied the motion, citing Williams's failure to present any legal authority that supported granting his request.

¶ 15 After briefing and hearing, the circuit court affirmed the final administrative decision denying Williams's self-employment application. Williams filed a motion for reconsideration, which the circuit court denied.

¶ 16 In late 2018, Williams took this further appeal in which he identifies seven errors.

¶ 17 At the outset of his brief, Williams contends the standard of our review is *de novo*, but he cites no supporting authority. The agency contends the standard of review is clear error. The agency is correct.

¶ 18 The hearing officer's decision is the agency's final administrative decision. 89 Ill. Adm. Code 510.120(a)(2) (2003) (the agency's administrative action becomes final "upon issuance of a hearing decision"). The agency's final administrative decision was subject to judicial review first in the circuit court pursuant to a common law writ of *certiorari* because the state act that governs vocational rehabilitation services does not adopt the Administrative Review Law (Review Law) (735 ILCS 5/3-101 *et seq.* (West 2016)). The Review Law applies only to a final agency decision when adopted "by express reference" in "the Act creating or conferring power on such agency." 735 ILCS 5/3-102 (2016); see 89 Ill. Adm. Code 510.120(c) (2003) (specifying that after the hearing officer's decision has become final, "[a]ny further appeal *** must be made to the courts by common law writ of *certiorari*"); see also *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 333, 909 N.E.2d 806, 811 (2009) (*certiorari* survives as a means to review agency decisions).

¶ 19 The nature and extent of judicial review under *certiorari* is "virtually the same" as review under the Review Law. (Internal quotation marks omitted.) *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 35, 11 N.E.3d 489. Under either the Review Law or common law *certiorari*, courts are "limited to [considering] *** the evidence submitted in the administrative hearing and may not hear additional evidence." (Internal quotation marks omitted.) *King's Health Spa*, 2014 IL App (2d) 130825, ¶ 32. Also, "[a]s a general rule, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review." *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97, 776 N.E.2d 166, 192 (2002).

¶ 20 We review the agency's final administrative decision, instead of the determination of the circuit court. *Outcom*, 233 Ill. 2d at 337.

¶ 21 The applicable standard of review depends upon the issue presented. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819, 914 N.E.2d 208, 214 (2009). The agency's factual findings are "*prima facie* true and correct" (735 ILCS 5/3-110 (West 2016)) and will not be disturbed on appeal unless they are against the manifest weight of the evidence (*Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16, 968 N.E.2d

1241). When the issue is one of law, the *de novo* standard applies. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211, 886 N.E.2d 1011, 1018 (2008). Whether a given set of facts satisfies the applicable legal standard is a mixed question of law and fact that is reviewed under the largely deferential clear error standard. *Cinkus*, 228 Ill. 2d at 211; *American Federation of State, County, & Municipal Employees (AFSCME), Council 31 v. State*, 2014 IL App (1st) 130655, ¶ 22, 25 N.E.3d 52 (clear error review " 'is significantly deferential to an agency's experience in construing and applying the statutes that it administers.' " (quoting *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143, 849 N.E.2d 349, 358 (2006))

¶ 22    In this case, the hearing officer's determination that Williams's request for services did not meet the requirements of the program as set forth in the statutory and regulatory scheme (see 89 Ill. Adm. Code 590.20, 590.315, 590.330 (2012)), presents a question of fact and law, which we review for clear error. The agency's resolution of a mixed question is clearly erroneous only if our review of the entire record results in our "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211.

¶ 23    We have reordered Williams's seven contentions chronologically, so that we may address them efficiently. We begin with his fifth contention, which is that the burden of proof is always on the government, whether the parties are at an administrative hearing or in the courts for review of the administrative decision. Williams contends that an Illinois regulation that states that he is responsible for proving that the agency erred is contrary to federal law. He contends that because he was held to the wrong standard at the administrative hearing, the hearing officer's ruling should be vacated and the Illinois regulation which he finds offensive should be "repealed."

¶ 24    The title of the federal regulation he relies on, 34 C.F.R. § 361.50 (2016), indicates that the law concerns a state agency's "Written policies governing the provision of services for individuals with disabilities." The specific paragraph that Williams cites provides:

"(a) Policies. The State unit must develop and maintain written policies covering the nature and scope of each of the vocational rehabilitation services specified in § 361.48 and the criteria under which each service is provided. The policies must ensure that the provision of services is based on the rehabilitation needs of each individual as identified in that individual's IPE and is consistent with the individual's informed choice. The written policies may not establish any *arbitrary* limits on the nature and scope of vocational rehabilitation services to be provided to the individual to achieve an employment outcome." (Emphasis added.) 34 C.F.R. § 361.50(a) (2016).

¶ 25    The state regulation he contends contradicts this federal regulation concerns "[Administrative] Appeals and Hearings," specifically, the "Conduct of Hearings." See 89 Ill. Adm. Code 510.105 (2003). It states:

"f) The *grievant shall have the responsibility to prove* by the preponderance of the evidence that the action or inaction by DHS-ORS was not in accordance with federal or State laws or regulations, against DHS-ORS policy, not in accordance with the grievant's IPE (89 Ill. Adm. Code 572) or HSP Service Plan (89 Ill. Adm. Code 684), or inappropriate for the customer. The Impartial Hearing Officer shall inform the grievant of this requirement at the beginning of the hearing." (Emphasis added.) 89 Ill. Adm. Code 510.105(f) (2003).

¶ 26    Williams contends that because the federal regulation indicates that a state's written policies may not "establish any arbitrary limits" (34 C.F.R. § 361.50(a) (2016)), the agency is required to give the applicant a specific reason when it denies or limits the provision of vocational rehabilitation services. (During the administrative hearing, Williams erroneously defined the term "arbitrary" to mean general rather than specific to him. "Arbitrary" is defined as "coming about seemingly at random or by chance or as a capricious and unreasonable act of will." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/ arbitrary (last visited Oct. 24, 2019) [https://perma.cc/FK5S-GXZP]. Williams contends the agency's federal obligation to specify why it denied his application also means that the agency must bear the burden at a subsequent administrative hearing to prove that its decision was correct and that this burden continues in any review. He contends *Jones*, 689 F.2d 724, and *Reaves v. Missouri Department of Elementary & Secondary Education*, 422 F.3d 675 (8th Cir. 2005), are examples of this standard. He concludes that the state regulation indicating the "*grievant shall have the responsibility to prove* by the preponderance of the evidence [that the decision was incorrect]" erroneously puts the burden of proof on the petitioning party. He also states that the state regulation "seems to violate due process of the Fourteenth Amendment."

¶ 27    In our opinion, however, Williams has not only misread the federal and state provisions, he has also failed to cite precedent that supports his erroneous argument.

¶ 28    There is no inconsistency between the federal and state regulations that Williams cites. The two regulations address two different subjects. The federal regulation concerns the application phase for vocational rehabilitation services. The federal regulation addresses the contents of the written policies which the agency must follow when it responds to a person's application for vocational rehabilitation services. There is no indication that the agency failed to have its written policies in place. There is no indication that the agency failed to follow its written policies when it informed Williams of its decision to deny his application. The federal regulation does not speak to any party's burden of proof. On the other hand, the state regulation becomes relevant only if the applicant is displeased by the agency's decision and requests an administrative hearing in order to challenge that decision. If the person challenges the agency's decision, the state regulation indicates that the person bears the burden of proving that the agency's decision is wrong. Thus, the federal regulation and the state regulation speak to two different topics. Because they concern two different topics, they cannot be in conflict. Williams's discussion of these two regulations does not substantiate that the burden of proof is always on the government.

¶ 29    Furthermore, Williams misstates the relevance of *Jones* and *Reaves*. The first case concerns a deaf individual who enrolled at the Illinois Institute of Technology, in the school's mechanical engineering program. *Jones*, 689 F.2d at 727. The Illinois Department of Rehabilitation Services provided financial assistance for Jones's tuition, books, and room and board, but the state agency refused to pay for the sign language interpreter that Jones needed as a deaf person. *Jones*, 689 F.2d at 727. The school temporarily paid for the interpreting services, but then informed the state agency that it would no longer do so. *Jones*, 689 F.2d at 727. Jones filed suit against the state agency and the school, and the courts determined that both defendants were responsible for providing an interpreter, but that the state agency was primarily responsible. *Jones*, 689 F.2d at 730. Williams now quotes the introductory paragraphs of the appellate court's opinion (see *Jones*, 689 F.2d at 726-27), as well as the summary indicating that the trial court granted Jones's motion for summary judgment and

denied the agency's cross-motion for summary judgment (*Jones*, 689 F.2d at 726). Williams also quotes the statement that the trial court entered an injunction requiring the agency to provide interpreter services and, if Jones lost his eligibility for vocational rehabilitation services, requiring the school to provide the interpreter. *Jones*, 689 F.2d at 726. Nothing in these sections or anywhere else in *Jones* concerns a party's burden of proof, and the case does not lend any support to Williams's conclusion that "the Burden of Proof is always on [the agency]." Williams sets out a short portion of *Reaves*, 422 F.3d at 681, an opinion indicating that it was appropriate for a federal trial court to use the preponderance of the evidence standard while giving due weight to the conclusions reached in a state due process hearing. There is no language in *Reaves* indicating that the agency bore any burden of proof.

¶ 30    His statement that the state regulation "seems to violate due process" is a bare statement without any supporting analysis or precedent. A *pro se* litigant is held to the same standards as a litigant represented by an attorney. *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067, 916 N.E.2d 45, 56 (2009). No appellant may "foist the burden of argument and research" onto this court. *Obert v. Saville*, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928, 931 (1993). Williams's *pro se* status does not excuse him from the burden of providing this court with a cohesive argument supported by legal precedent. The constitutional argument has been waived. See *Obert*, 253 Ill. App. 3d at 682.

¶ 31    In short, Williams misconstrues the meaning of the federal and state regulations, and he cites no authority that supports his misinterpretation.

¶ 32    We also note that throughout his brief, Williams portrays vocational rehabilitation services as an entitlement to cash or other resources that he may receive simply because he indicates he wants to receive the cash or other resources. Even if vocational rehabilitation services were an entitlement, which they are not (see *Campbell v. Miller*, 835 F. Supp. 2d 458, 471 (S.D. Ohio 2011) (nothing in the federal vocational rehabilitation statute suggests that disabled persons are entitled to vocational rehabilitation services)), that would not alter Williams's burden of proof during the administrative proceedings (see, *e.g.*, *Roszak v. Kankakee Firefighters' Pension Board*, 376 Ill. App. 3d 130, 138, 875 N.E.3d 1281, 1287 (2007) (indicating an applicant for disability pension had the burden of showing his entitlement)).

¶ 33    We conclude that the hearing officer accurately informed Williams of his burden of proof. By filing for review, Williams took on the responsibility of showing that the agency's decision was incorrect. The hearing officer then held Williams to this standard when the hearing officer ruled that "[b]ased on the applicable laws and rules, the testimony and documents admitted at hearing, [Williams] did not meet his required burden of proof." The burden of proof was not and is not, as Williams argues, "always on [the agency]." As the petitioning party, Williams has born the burden of proof in the administrative hearing, in the circuit court, and now here in the appellate court. It was and has been Williams's burden to prove that the agency made a mistake when it denied his application.

¶ 34    Proceeding chronologically through Williams seven contentions, we next address his third argument. Williams argues that his rehabilitation counselor and the hearing officer misjudged his application despite a host of federal statutes and regulations and *Jones*, 689 F.2d 724, which Williams contends indicate he should have been granted all of the "vocational rehabilitation services" that he requested. He contends generally that the "Illinois Administrative Codes *** discriminate toward people with disabilities" and "violate federal statutes and the Fourteenth Amendment." Williams's rehabilitation counselor and the hearing officer determined that

instead of seeking vocational rehabilitation services, Williams was seeking the costs of starting a business. Williams asks that we either award all the "services" he requested or that we "repeal" Illinois regulations he believes are inconsistent with his federal rights and then remand with orders that the agency comply with Williams's interpretation of his federal rights.

¶ 35    The governing federal and state provisions as well as the precedent Williams relies upon indicate, however, that his application was properly denied because he did not comply with the program's requirements.

¶ 36    Federal law indicates the federal government grants funds in order "to assist States in operating *** programs" that are "[d]esigned to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities" that lead to employment and economic self-sufficiency. 34 C.F.R. § 361.1 (2016) (stating purpose of the State Vocational Rehabilitation Services Program); see also 29 U.S.C. § 720(b)(1) (2012) (declaring purpose and policy of vocational rehabilitation services).

¶ 37    In turn, Illinois law gives the defendant department the "power[ ] and dut[y]" to cooperate with the federal government in administering the federal act. 20 ILCS 2405/3(a) (West 2016); see also 20 ILCS 2405/5a (West 2016) (accepting "the provisions and benefits of *** the Rehabilitation Act of 1973," and "empower[ing] and direct[ing] the Department to cooperate with the federal government in carrying out [its] provisions"); 20 ILCS 2405/3(g) (West 2016) (authorizing the department to assign its responsibilities to subdivisions it has created); 20 ILCS 1305/1-15 (West 2016) (creating the department and authorizing it to create divisions to carry out its responsibilities).

¶ 38    Pursuant to Illinois law, the defendant agency "prescribe[s] and supervise[s] such courses of vocational training and provide[s] such other services as may be necessary for the habilitation and rehabilitation of persons with one or more disabilities." 20 ILCS 2405/3(b) (West 2016). The Illinois vocational rehabilitation program helps individuals with disabilities achieve an "employment outcome" (89 Ill. Adm. Code 553.20 (2005)), including self-employment if appropriate (89 Ill. Adm. Code 590.310(b) (2012)), upon a showing that those individuals meet all of the program's requirements.

¶ 39    This structure enables the agency to equitably disburse the program's finite funds to qualified and eligible individuals. See, *e.g.*, *Murphy v. Office of Vocational & Educational Services for Individuals With Disabilities*, 705 N.E.2d 1180, 1185 (N.Y. 1998).

¶ 40    No one, however, has an "entitlement to receive funds for vocational training." *Campbell*, 835 F. Supp. 2d at 471; see also 29 U.S.C. § 722(a)(3)(B) (2012). Furthermore, the agency has no legal obligation to provide an individual with vocational rehabilitation services toward a goal that he or she has unilaterally chosen. Federal law requires vocational counselors to consider a client's "informed choice" and "interests" in creating an employment plan, but the counselor must also assess the client's "strengths, resources, *** abilities, [and] capabilities." 29 U.S.C. § 722(a)(3)(A) (2012); see also *Reaves*, 422 F.3d at 680.

¶ 41    Consistent with its obligations under federal and Illinois law, the agency implemented procedures and standards that Williams failed to meet. Williams failed to gain approval for an IPE. That was in part because he asked for $81,138 from the agency, with zero contribution of financial resources on his part. The agency's regulations prevent it from paying more than 50% of the cost of services toward a self-employment plan and do not allow it to pay more than $10,000 toward a self-employment plan, and Williams was denied an exception to these financial requirements. He also failed to show that he was requesting vocational rehabilitation

- 10 -

services as opposed to cash to establish a business, and the agency's regulations do not allow it to "provide funding for *** cash for establishing a business." Williams was not entitled to the funds he demanded for his unilaterally chosen and unapproved goal. See 29 U.S.C. § 722(a)(3)(B) (2012); *Yochim v. Gargano*, 882 F. Supp. 2d 1068, 1079 (S.D. Ind. 2012) (client of a vocational rehabilitation agency does not have the final or exclusive decision-making authority to determine his own vocational goal); *Campbell*, 835 F. Supp. 2d at 471. He did not meet the requirements of the program.

¶ 42    Williams misconstrues the federal statutes and regulations that he contends entitled him to determine what he should receive. For instance, he quotes the statement in 29 U.S.C. § 723(a) (2012) that "[v]ocational rehabilitation services provided under this subchapter are *any services* described in an individualized plan for employment *necessary* to assist an individual in preparing for, securing, retaining, or regaining an employment outcome." (Emphases added.) Williams erroneously contends this sentence means that "any services" that he applies for qualify as "vocational rehabilitation services." He combines this misunderstanding with a federal law, a federal regulation, and a state regulation that indicate the agency may provide occupational tools, equipment, and supplies, as well as transportation. He concludes that because he requested items such as video-making equipment for his new occupation and a car for his personal transportation, he was entitled to receive them.

¶ 43    Williams, however, has not only misread the federal and state provisions, he has also failed to cite any precedent that supports his reasoning.

¶ 44    Furthermore, even if we accepted Williams's contention that essentially anything that he requested becomes a "vocational rehabilitation service[ ]," Williams's argument would still fail due to (1) the clear federal requirement that the "services" must be "described in an individualized plan for employment" (29 U.S.C. § 723(a) (2012)) and (2) the undisputed fact that Williams failed to obtain an IPE. The state regulation he cites also specifies that the all tools, equipment, and supplies provided for self-employment "must be specifically listed in the customer's IPE." 89 Ill. Adm. Code 590.320(b) (2012). Williams did not qualify for the funds and other resources that he requested.

¶ 45    As another example, Williams quotes the statement in 34 C.F.R. § 361.48 (2016) that "[a]s appropriate to the vocational rehabilitation needs of each individual and consistent with each individual's informed choice, the designated state unit *must ensure* that the following vocational rehabilitation services are *available* to assist the individual." (Emphases added.) He pairs these words with the indication in 34 C.F.R. § 361.50(a) (2016) that "[t]he written policies may not establish any arbitrary limits on the nature and scope of vocational rehabilitation services to be provided to the individual to achieve an employment outcome" and the language in 34 C.F.R. § 361.50(c)(3) (2016) that "[t]he State unit may not place absolute dollar limits on specific service categories or on the total services provided to an individual." Williams contends that the emphasized words means the agency must ensure that vocational rehabilitation services are made available to him and indicate that the agency violated the federal standards by imposing the 50% matching funds requirement and capping its contribution at $10,000 in resources.

¶ 46    Williams misreads the word "available" to mean that resources must be given to him, when, in fact, "available" in this context means only "accessible" or "obtainable." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/available (last visited Oct. 24, 2019) [https://perma.cc/5BEH-9WZ2]. The record indicates that the resources

Williams wants are indeed "accessible" to him or "obtainable" by him and that he needs only meet the agency's preliminary requirements, which he has not done. Nothing in the federal provisions prevents the agency from imposing the cited requirements when it implements its program. Williams's view that he is entitled to unilaterally dictate that he will receive thousands of dollars for his proposed business plan is unworkable and misinterprets what Congress and the Illinois legislature intended. His interpretation would create a potentially unlimited entitlement to program funds for anyone who requested them.

¶ 47    Williams relies on *Jones* for its indication that the deaf plaintiff, who was receiving college tuition, books, and room and board at the agency's expense, was also entitled to receive the *additional* assistance of interpreter services at the agency's expense. See *Jones*, 689 F.2d 724. This opinion might be helpful to Williams if he had an IPE in place, was currently receiving vocational rehabilitation services from the defendant agency, and was denied *additional* vocational rehabilitation services that were necessary. The record indicates, however, that Williams is not currently receiving vocational rehabilitation services through the agency. Thus, Williams is not like the plaintiff in *Jones*, and Williams cannot rely on the case to support this appeal.

¶ 48    Furthermore, the agency has not placed an "absolute dollar limit[ ]" on a service category or placed "arbitrary limits on the nature and scope of vocational rehabilitation services," as Williams contends. See 34 C.F.R. § 361.50(a), (c)(3) (2016). The Division bureau chief is authorized to, but need not, grant exceptions to the agency's contribution limit (89 Ill. Adm. Code 590.315(b)(5) (2012)), and the agency pays up to 100% of costs associated with accommodating an applicant's disability (89 Ill. Adm. Code 590.320(d) (2012)). These regulations are far from arbitrary. They are connected to the legitimate consideration of cost in providing services (see *Yochim*, 882 F. Supp. 2d at 1080 (agency may give due regard to financial costs)) and they allow the agency to grant exceptions when appropriate (see *Begg v. Board of Fire & Police Commissioners*, 99 Ill. 2d 324, 332, 459 N.E.2d 925, 928 (1984) (regulation is presumed to be valid and will not be set aside unless person challenging its validity meets burden to show it is clearly arbitrary, unreasonable, or capricious)).

¶ 49    In addition, Williams cites no statute, regulation, or precedent that would require the agency to dispense cash to anyone to establish a business.

¶ 50    Williams's unsupported statement that the "Illinois Administrative Codes" are unconstitutional or otherwise illegal is waived. See *Obert*, 253 Ill. App. 3d at 682.

¶ 51    For these reasons, we conclude that the final administrative decision denying Williams $81,138 for his proposed self-employment plan was not clearly erroneous.

¶ 52    Our analysis above adequately addresses Williams's sixth contention, that it was improper for the agency to implement a state regulation indicating it does not pay cash for related business costs. See 89 Ill. Adm. Code 590.330(a) (2012).

¶ 53    Williams's second of the seven contentions is that the hearing officer should have overturned an Illinois regulation, section 510.30 of Title 89 of the Illinois Administrative Code (89 Ill. Adm. Code 510.30 (1999)), based on Williams's interpretation of federal law. The Illinois regulation concerns administrative appeals and hearings and indicates that the administrative forum is not the place for "challenging the legality of DHS-ORS rules." 89 Ill. Adm. Code 510.30(f) (1999). The abbreviation "DHS-ORS" refers to the Department of Human Services and its Office of Rehabilitation Services, which has been renamed Division of Rehabilitation Services (the current defendant). Williams does not indicate that invalidating

the Illinois regulation would have made any difference in this case. Nevertheless, he states that the Illinois regulation or, more broadly, the Illinois impartial hearing process "violate[s] federal law or due process," specifically two federal laws, "29 U.S.C. § 722(c)(5) [*sic*]" and "34 CFR 361.57 (b)(3), (e)(2), or (e)(3) [*sic*]," which set out procedures for administrative hearings. Neither of the federal laws, however, indicates that an Illinois administrative hearing officer should be empowered to address the legality of state rules. Thus, it is not apparent why Williams considers the federal laws to be grounds for invalidating the Illinois regulation. He contends he presented this issue at the administrative hearing when he disagreed with the hearing officer's statement that the petitioning party bears the burden of proving by a preponderance of the evidence that the defendant agency's decision is incorrect. That exchange is quoted fully above, but Williams is relying on this particular statement:

> "Okay, I want to add that I received from the bureau of administrative hearings in the mail one of *** your procedures and it states in there a set of regulations, 29 U.S.C. 722, and within that federal regulation that they said that the bureau of administrative hearings is supposed to *** only consider state policies and regulations that are consistent with federal requirements."

¶ 54 Despite our thorough reading and contemplation of Williams's written arguments, the transcript of the administrative hearing, the two federal laws, and the Illinois regulation that Williams deems offensive, we find his argument to be incomplete and unclear. Williams has failed to identify any inconsistency between the state regulation and federal laws, and we do not find any conflict. Moreover, Williams has also failed to indicate how the state regulation impacted his administrative hearing. Put another way, he has given no indication that invalidating the Illinois regulation could change the outcome of this case. The hearing officer seemed equally perplexed by Williams's statement, as she responded, "Okay, so do you have a question?" and "Okay, then did you have a point?" In any event, it is well established that an administrative agency lacks the authority to adjudicate the legality of agency regulations. See *Carpetland*, 201 Ill. 2d at 397 (an administrative agency lacks the authority to invalidate a statute or question its validity); *Mefford v. White*, 331 Ill. App. 3d 167, 171, 770 N.E.2d 1251, 1254 (2002) (vehicle driver asserted constitutional challenge in administrative hearing, thus preserving dispute regarding legality of administrative rule for its subsequent adjudication in the circuit court); *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 322 Ill. App. 3d 846, 849, 751 N.E.2d 196, 199 (2001) (on electric utility's appeal from agency's order, court was permitted to address whether administrative rule infringed on the utility's state or federal constitutional rights). Therefore, there is no legal basis for Williams's conclusion that the hearing officer's ruling should be "voided or vacated," that the defendant agency should be ordered "to comply with federal statutes," or that the case should be remanded "so that violations" of federal statutes can be addressed.

¶ 55 All of Williams's remaining contentions concern the circuit court proceedings.

¶ 56 Williams's first of the seven contentions is that the circuit court should have permitted him to present new issues and evidence and then applied the preponderance of the evidence standard rather than review the existing administrative record under the clearly erroneous standard to determine whether the hearing officer erred. As we determined above, the governing standard of review in this case involving mixed questions of fact and law is clear error.

¶ 57    Williams's fourth contention is that the circuit court "failed to take into account that people with disabilities are a protected class, and because of this[,] the clearly erroneous standard does not apply." We have already discussed the standard of review, and Williams now fails to cite any authority indicating his disability warranted an exception to that standard.

¶ 58    Williams's sixth contention is that the circuit court erred by ruling that the agency "do[es] not have to provide cash pay for related business costs." He contends that we should "[r]epeal 89 Ill[.] Adm. [Code] 590.330(a) [(2012)]" which is the state regulation stating that the agency "shall not provide *** cash for establishing a business" and that we should determine "Plaintiff should be given cash to pay for services." Here, Williams repeats other unpersuasive sections of his brief indicating that anything he requests from the agency qualifies as "vocational rehabilitation services," clients "get to pick how the services will be paid for not [the agency]," and "if we need cash to pay for services then [the agency] must provide it."

¶ 59    Much of Williams's seventh contention is incomprehensible. To some extent, he repeats his second appellate contention, but directs it at the circuit court proceedings rather than the administrative hearing. He contends "there are about 18 Administrative codes that need to be repealed," but says he was prevented from challenging them in this proceeding when the circuit court declined to address arguments that are beyond the scope of an administrative review action. He attributes this in part to section 510.30(f) of Title 89 of the Illinois Administrative Code (89 Ill. Adm. Code 510.30(f) (1999)), which is one of the department's general provisions about hearings and appeals regarding the agency's provision of services. This particular section indicates that "What May Not Be Appealed" under this portion of the administrative code includes "(f) issues challenging the legality of DHS-ORS rules." 89 Ill. Adm. Code 510.30 (1999). Williams reasons that because the legality of administrative rules is a topic that is outside the scope of administrative review hearings, this task "has to be done in court." He contends, however, that sections 3-101, 3-110, and 3-111 of the Review Law indicate that no new or additional evidence shall be submitted to the circuit court. See 735 ILCS 5/3-101, 3-110, 3-111 (West 2016). Actually, only one of these three sections refers to new or additional evidence. Section 3-110 states as follows:

    "Scope of review. Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed. The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2016).

¶ 60    The other two statutes are quite lengthy and do not contribute anything to the clarity or coherence of Williams's argument." See 735 ILCS 5/3-101 (West 2016) (defining terms such as " 'Administrative agency' " and other terms that are used in an administrative review action); 735 ILCS 5/3-111 (West 2016) (setting out powers of the circuit court).

¶ 61    Williams then reasons that in combination, the administrative rule and the civil statutes "prevent[ ] one from obtaining a judicial review of the violation of one's rights."

¶ 62    We disagree with Williams. He misreads the authority he cites. He fails to cite any portion of the record indicating his rights were disregarded or not addressed. Williams has not been prevented from "obtaining a judicial review of the violation of [his] rights."

¶ 63 Williams's argument regarding the fairness of the circuit court proceedings segues into a suggestion that the situation would have been rectified if he had been assisted by a CAP attorney. CAP is a "free and confidential" service that "helps people with disabilities receive quality [vocational rehabilitation] services by advocating for their interests and helping them identify resources, understand procedures, resolve problems, and protect their rights in the rehabilitation process." *Client Assistance Program (CAP)*, Ill. Dep't of Human Servs., https://www.dhs.state.il.us/page.aspx?item=29978 (last visited Oct. 24, 2019) [https://perma.cc/AT5C-GEPB]. At the outset of this opinion, we summarized the correspondence dated March 29, 2017, in which CAP declined to provide Williams with counsel.

¶ 64 Williams now quotes federal law regarding CAP funding and he then briefly states:

"177) Plaintiff did file a motion asking for a lawyer from the Client Assistance Program, and the motion was denied. Page C577.

178) However, it was the court and the Defendants that wanted Plaintiff to attain a lawyer. Page C 510 and Page C 511. Thus, they created the issue.

* * *

181) Order the Client Assistance Program to provide Plaintiff a lawyer."

¶ 65 Plaintiff's citations to pages 577, 510, and 511 of the record are to circuit court orders. The order dated August 1, 2017, indicates the circuit court entered and continued Williams's motion requesting a CAP attorney and then delayed the administrative review proceedings until September 12, 2017, in order to give Williams time to obtain counsel. The order dated September 12, 2017, indicates the circuit court gave Williams an additional month to obtain counsel and entered and continued Williams's motion until October 12, 2017. The third order, dated January 25, 2018, states in relevant part:

"Plaintiff's motion provides no grounds for the court to issue such an order. The [circuit] court has been presented with no precedent that states that the Illinois Department of Human Services is required to provide a lawyer to Plaintiffs in administrative review actions. Therefore, Plaintiff's motion requesting the services of CAP is denied."

¶ 66 When a court is authorized to appoint counsel, its decision whether to do so is reviewed for an abuse of discretion. *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 51, 960 N.E.2d 1. However, there is no constitutional right to appointment of counsel in civil cases and a circuit court has discretion to appoint counsel for a party in a civil action only if authorized by statute. See *Doherty v. Caisley*, 104 Ill. 2d 72, 80, 470 N.E.2d 319, 323 (1984) (there is no constitutional right to appointment of counsel in civil cases); *Tedder v. Fairman*, 92 Ill. 2d 216, 225, 441 N.E.2d 311, 315 (1982) (same); *Dupree*, 2011 IL App (4th) 100351, ¶ 54 (courts have no duty to appoint counsel in a civil action).

¶ 67 CAP was not set up to provide the type of assistance that Williams wanted. CAP informs and advises individuals regarding vocational rehabilitation benefits and assists and advocates for individuals "in their relationships with [vocational rehabilitation] projects, programs, and services ***, including assistance and advocacy in pursuing legal, administrative, or other appropriate remedies." 29 U.S.C. § 732(a) (2012). CAP "*shall* provide *information* on the available services and benefits" and it "*may* provide *** assistance and advocacy." (Emphases added.) 29 U.S.C. § 732(a) (2012).

- 15 -

¶ 68    In claiming that he was entitled to an attorney, Williams relies on the statutory provision that CAP assists and advocates for individuals "upon request of such clients or client applicants." 29 U.S.C. § 732(a) (2012); see also 34 C.F.R. § 370.4(a) (2016). But that language does not require that Williams be provided an attorney by CAP in a circuit court action seeking review of a final administrative decision, and it does not authorize the circuit court to order CAP to provide Williams with legal counsel. Williams's review action was already filed and pending in the circuit court when he asked CAP to provide an attorney to represent him in the circuit court proceedings.

¶ 69    When it denied his request, CAP indicated that it was exercising discretion: "CAP's decision on what advocacy we will provide depends on the facts of the case and rules." CAP also denied Williams's request because he had already completed the administrative review process and "CAP is mandated to resolve problems at the lowest possible level." See also 29 U.S.C. § 732(g)(3)(A) (2012) (federal statute providing funding for CAP and stating, "Each program shall contain provisions designed to assure that to the maximum extent possible alternative means of dispute resolution are available for use at the discretion of an applicant or client of the program prior to resorting to litigation or formal adjudication to resolve a dispute arising under this section."); 34 C.F.R. § 370.43(a) (2016) (federal regulation regarding CAP, stating, "Each designated agency shall implement procedures designed to ensure that, to the maximum extent possible, good faith negotiations and mediation procedures are used before resorting to formal administrative or legal remedies.").

¶ 70    Operating with such broad discretion, CAP's decision whether to provide assistance and advocacy to Williams was not reviewable by the circuit court. Judicial review is precluded if the underlying statute provides "no meaningful standard against which to judge the agency's exercise of discretion." (Internal quotation marks omitted.) *Hanrahan v. Williams*, 174 Ill. 2d 268, 274, 673 N.E.2d 251, 274 (1996). Section 732, quoted above, provides no standards, goals, or criteria by which a court could evaluate the agency's discretionary decision.

¶ 71    Moreover, because CAP exercises discretion in choosing when to provide legal assistance, the CAP program does not create an entitlement to an attorney. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005). The federal authority that Williams quotes did not create an entitlement to legal counsel in the circuit court action.

¶ 72    We conclude that the circuit court did not abuse its discretion denying Williams's motion to be provided with legal counsel in this administrative review action.

¶ 73    Because the record indicates the administrative decision was not clearly erroneous and because none of Williams's appellate contentions are persuasive, we affirm the agency's decision. We also affirm the circuit court's denial of Williams's motion to be appointed with legal counsel in this civil action.

¶ 74    Affirmed.