2021 IL App (1st) 192268-U
No. 1-19-2268

SECOND DIVISION
March 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| RODNEY LOVE, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 CH 317 |
| | ) | |
| CITY OF CHICAGO and RALPH PRICE, | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | Eve M. Reilly, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Where the plaintiff failed to present claims of error that were supported by well-reasoned argument, relevant legal authority, and citations to the record, there was no basis on which to reverse the trial court's grant of summary judgment in favor of defendants on plaintiff's complaint alleging violations of the Illinois Freedom of Information Act.

¶ 2    This matter arises from plaintiff, Rodney Love's, complaint for declaratory and injunctive relief.  In that complaint, plaintiff alleged that defendants, the City of Chicago ("City") and Ralph Price, general counsel for the Chicago Police Department ("CPD"), violated the Illinois Freedom of Information Act ("FOIA") (5 ILCS 140/1 *et seq.* (West 2014)) by failing

to respond to two requests he submitted to the CPD. The trial court granted summary judgment in favor of defendants on plaintiff's claims, and plaintiff now appeals. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4        In January 2016, plaintiff filed his complaint in this matter. In that complaint, plaintiff alleged that he had submitted two FOIA requests—one in September 2015 and one in October 2015—to the CPD, requesting all information and evidence related to the murder of Lyphus Pouncy, for which plaintiff was prosecuted and convicted. At the time that plaintiff filed his complaint, defendants had not responded to plaintiff's requests.

¶ 5        Plaintiff's two FOIA requests appear to be substantially identical, and in a reply plaintiff filed to defendants' answer, plaintiff acknowledged that the two requests were the same, except that the October 2015 request also included an additional paragraph that requested any plea deals or contracts made by someone named Christopher Young during plea negotiations.

¶ 6        In September 2016, defendants filed a motion for summary judgment, arguing that they had, since the filing of plaintiff's complaint, produced the requested records and, therefore, plaintiff's claims had been rendered moot. In support, defendants attached the affidavit of John McDonald. In that affidavit, McDonald, a civilian Freedom of Information Officer with the CPD, averred that after receiving plaintiff's request, he identified the "RD [Record Division] numbers" associated with the Pouncy murder: HH 632040 (the arrest/case report file) and HH 610681 (the area file). McDonald requested and received the area file from the Detective Division of the CPD, which included forensic report information. McDonald also requested and received from the CPD Records Division the arrest/case report file. McDonald also ordered photographs from the CPD Forensics Services Photo Lab Unit. That Unit verified that the

requested photographs had been located, but McDonald was still awaiting delivery of the photographs at the time of his affidavit. He forwarded all of the responsive documents to the City's Law Department. According to the motion for summary judgment, McDonald forwarded a total of 119 pages to the Law Department. Upon receipt, the Law Department made redactions to those records pursuant to FOIA and then sent all 119 pages to plaintiff on September 8, 2016.

¶ 7 In response to defendants' motion for summary judgment, plaintiff argued that McDonald's affidavit was insufficient, because it did not state how many pages he forwarded to the Law Department. He also argued that defendants failed to produce an affidavit from defense counsel or someone else that attached the documents that were produced to plaintiff. Accordingly, plaintiff argued that his claims were not moot because defendants had not fulfilled their obligations with respect to his FOIA requests.

¶ 8 The trial court agreed with plaintiff, concluding that McDonald's affidavit did not comply with Supreme Court Rule 191(a) in that it did not attach the documents on which McDonald relied, namely, the documents that McDonald believed to be responsive to plaintiff's FOIA requests. For that reason, the trial court struck McDonald's affidavit and denied defendants' motion for summary judgment without prejudice to filing an amended motion for summary judgment that provided an update on the outstanding photographs and attached a proper affidavit.

¶ 9 In October 2017, defendants filed a second motion for summary judgment, again arguing that plaintiff's claims had been rendered moot by defendants' production of documents to plaintiff. In support, defendants attached the affidavits of Sarah Brown, Wioletta Muzupappa, and Philip Santell.

¶ 10    In her affidavit, Brown, a civilian Public Information Officer with the CPD, averred that upon reviewing plaintiff's FOIA requests, she observed that plaintiff's requests were for records related to the murder case of Pouncy and plaintiff's arrest for that murder. Based on her experience as a FOIA officer, Brown determined that most of the records sought by plaintiff would be located in the investigative file maintained by the Bureau of Detectives. Using the RD number assigned to the murder case—HH610681—and the system the CPD uses to track FOIA requests, Brown learned that the records associated with HH610681 had been previously requested by a different FOIA officer. Nevertheless, to ensure completeness of the response to plaintiff's requests, Brown started the record gathering process anew. Brown requested the full investigative file for HH610681 from the Bureau of Detectives and the photographs from the Photographic Unit. Officer Wioletta Muzupappa with the Bureau of Detectives sent the full investigative file associated with HH610681. Due to their age, the photographs needed to be printed from negatives and, as of the date of Brown's affidavit, had not yet been received from the Photographic Unit. Brown then went through each paragraph of plaintiff's requests and averred that responsive documents to most of plaintiff's specific requests would be found in the produced investigative file. The only exceptions were requests that were so vague that Brown could not conduct searches for responsive documents, the photographs Brown had requested and not yet received, and documents related to plea deals, with which the CPD is not involved and possessed no responsive records.

¶ 11    With respect to plaintiff's requests for "'CR' complaint reports,"[1] Brown observed that plaintiff did not provide any specific information regarding whose CR files were sought. Usually, without names, the CPD was unable to process such requests. Using the CPD's FOIA

_____

[1] From the record, it appears that CR (complaint register) records are disciplinary records for CPD officers.

request tracking system, however, Brown was able to locate a previous FOIA request plaintiff had made that listed 13 names. Brown compared those 13 names against names found in the investigative file on the Pouncy murder and found that the names matched. As a result, Brown retrieved the CR records that had been sent to plaintiff in response to his previous FOIA request.

¶ 12     Brown forwarded the investigative file to the Law Department for redaction of FOIA exempt material. She did not remove any documentation from the file before sending it to the Law Department. Brown averred that a copy of the CPD's FOIA response to plaintiff was attached to her affidavit.

¶ 13     In her affidavit, Wioletta Muzupappa, a CPD officer assigned to the Bureau of Detectives, averred that she was contacted by Brown regarding plaintiff's FOIA request. From Brown, Muzupappa learned that the RD number assigned to plaintiff's case was HH610681. Using that number, Muzupappa determined that the file was stored at headquarters. She then pulled the file from headquarters storage. Upon examination of the file, she determined that it was the file plaintiff had requested. She forwarded the entire file to Brown. She received a copy of the file after Assistant Corporation Counsel Philip Santell had redacted FOIA exempt materials. Other than the redacted information, the records attached to Muzupappa's affidavit were a true and accurate copy of the records that she had pulled and provided to Brown.

¶ 14     In his affidavit, Santell averred that he received the investigative file and previous FOIA request response from Brown. He reviewed those documents and made redactions pursuant to applicable FOIA exemptions. On October 11, 2017, he mailed to plaintiff a cover letter explaining the redactions and a copy of the records he had received from the CPD. Attached to his affidavit were copies of the records and cover letter he mailed to plaintiff.

¶ 15    According to defendants' second motion for summary judgment, the documents provided to plaintiff in response to his FOIA requests on October 11, 2017, totaled 152 pages. Those 152 pages did not include the photographs requested by plaintiff, as they had not yet been received as of the time the second motion for summary judgment was filed. Defendants represented, however, that they would provide those photographs to plaintiff as soon as they were ready.

¶ 16    In response to the second motion for summary judgment, plaintiff argued that Brown's affidavit stated that the photographs were not completed, Muzupappa's affidavit did not state that the redacted file she received from Santell was the entire file that she sent to Brown, and that Santell's affidavit did not state that Santell sent the entire file except for redacted information to plaintiff and it did not identify what information was withheld and for what reason. Plaintiff also argued that he was only provided four years' worth of CR/RL[2] records, fingerprint and other forensic evidence reports were missing, the pages of the documents attached to the affidavits were not numbered, text messages and emails were not provided, defendants improperly redacted names in the records, and the photographs provided were in black and white and not color.

¶ 17    In their reply in support of their second motion for summary judgment, defendants argued, among other things, that at the time defendants responded to plaintiff's FOIA requests, there was in effect an injunctive order in another case that prevented defendants from releasing CR records that were more than four years old. In the reply, defendants also noted that on December 13, 2017, after they had been developed, color copies of the requested photographs were produced to plaintiff.

¶ 18    On August 10, 2018, the trial court granted defendants' second motion for summary judgment in part and denied it in part. In doing so, the trial court broke the documents requested

---

[2] Plaintiff also refers to "RL records" as "repeater list" records, but neither the briefs nor the record offer any insight as to what RL or repeater list records are.

by plaintiff into four categories: (1) investigative and prosecutorial documents, (2) electronic documents relevant to the murder and subsequent investigation, (3) lineup photographs used in the investigation, and (4) all "CR/RL records" for officers and detectives who worked on the Pouncy case. With respect to the requested investigative and prosecutorial documents, the trial court, after reviewing the submitted affidavits and conducting an *in camera* review of the documents, concluded that the CPD conducted a reasonable search, as reflected in the affidavits, and tendered the requested materials to plaintiff. Accordingly, the trial court granted summary judgment in favor of defendants on these materials.

¶ 19 Regarding the electronic materials, the trial court observed that plaintiff had not contested the production of these materials by defendants and, instead, simply speculated that there might exist additional materials that had not been produced. The trial court noted that plaintiff's speculation did not create a genuine issue of material fact and, having reviewed the produced materials, concluded that defendants had met their burden for summary judgment on these records.

¶ 20 With respect to the lineup photographs, the trial court noted that after the filing of plaintiff's response to the second motion for summary judgment, color photographs had been produced to plaintiff. Since then, plaintiff had not filed anything else to contest his receipt of the photographs. Therefore, the trial court concluded that no issue or claim remained that precluded summary judgment in favor of defendants on the photographs.

¶ 21 Finally, with respect to the CR and RL records, the trial court noted that the injunctive order defendants cited as the basis for not turning over records more than four years old had been reversed in July 2016. Given that and the fact that defendants did not articulate any other

grounds for retaining any older CR and RL records, the second motion for summary judgment was denied as to them.

¶ 22    In May 2019, defendants filed a third motion for summary judgment. In that motion, defendants asserted that they had provided all additional responsive documents to plaintiff's requests for CR/RL records. In support, they attached the affidavit of Peter Edwards, a sergeant with the CPD, who was assigned as a supervisor of the FOIA section of the CPD. In that affidavit, Edwards averred that he was contacted by the City's Law Department regarding plaintiff's FOIA request and learned that the only outstanding issue was the CR records. After reviewing plaintiff's FOIA requests, which requested CR records pertaining to plaintiff's murder investigation, Edwards gathered plaintiff's identifying information and identifying information related to the Pouncy murder. Using that information and his knowledge that CR records are kept and maintained by the CPD Bureau of Internal Affairs ("BIA"), Edwards requested responsive records from the BIA. After receiving records from the BIA, Edwards reviewed those records to determine whether they were records requested by plaintiff. He observed that the names, dates, and locations matched. He then forwarded the responsive records to the Law Department.

¶ 23    Defendants asserted that after making redactions pursuant to FOIA, the responsive records, which totaled 88 pages, were then sent to plaintiff on May 9, 2019. Defendants also asserted that "it is unclear what Plaintiff means by the use of the phrase 'repeater list' and what document Plaintiff seeks."

¶ 24    In response to the third motion for summary judgment, plaintiff argued that defendants continued to refuse to turn over responsive documents, defendants were acting in bad faith, and the affidavits defendants submitted during the proceedings violated Supreme Court Rule 191(a).

Plaintiff also argued that Santell did not submit an affidavit stating that he only received 88 pages or that after redacting information, plaintiff was only entitled to 88 pages. Plaintiff further argued that defendants did not submit a supporting affidavit describing what constituted a detailed search or where defendants searched for responsive documents. More specifically, plaintiff argued that Edwards's affidavit did not identify what the BIA searched for, what was given to him, or what he specifically requested from the BIA. Plaintiff also argued that defendants still had not tendered certain documents. Finally, plaintiff argued that defendants failed to tender an index of records on RD 632040 and improperly redacted certain information.

¶ 25    On October 7, 2019, the trial court entered an order granting defendants' third motion for summary judgment. The written order did not provide the reasons for the trial court's decision, and the record on appeal does not contain a transcript of the hearing on the third motion for summary judgment.

¶ 26    Plaintiff then instituted this appeal.

¶ 27                              ANALYSIS

¶ 28    Plaintiff pursues this appeal *pro se*. Although it is clear that plaintiff seeks reversal of the trial court's granting of defendants' third motion for summary judgment, plaintiff's specific claims of error and the legal basis for those claimed errors is not as readily apparent. Nevertheless, to the best of our ability, we address each of the contentions that we are able to identify in plaintiff's brief. None of them, however, warrant reversal in this matter.

¶ 29    FOIA cases are often and appropriately decided on motions for summary judgment. *Better Government Association v. City of Chicago*, 2020 IL App (1st) 190038, ¶ 9. Under section 2-1005(b) of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005(b) (West 2018)), summary judgment is appropriate when "the pleadings, depositions, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our review of the trial court's ruling on a motion for summary judgment is *de novo*. *Illinois Education Association v. Illinois State Board of Education*, 204 Ill. 2d 456, 459 (2003).

¶ 30        Under section 3(a) of FOIA (5 ILCS 140/3(a) (West 2014)), "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act." When a public body receives a proper request for information under FOIA, it is required to respond to that request unless one of the narrow statutory exceptions set forth in FOIA applies. *Illinois Education Association*, 204 Ill. 2d at 463. Whether a public body has conducted an adequate search for responsive records is determined by a standard of reasonableness that is dependent on the facts of each case. *Better Government Association*, 2020 IL App (1st) 190038, ¶ 31. The pivotal issue in such an inquiry is not whether relevant, responsive documents exist, but whether the public body's search was reasonably calculated to discovery those relevant, responsive documents. *Id.* The public body is not required to perform an exhaustive search of every possible location, but it must construe the FOIA request liberally and search those places that are reasonably likely to contain relevant, responsive documents. *Id.*

¶ 31        The initial burden of establishing the adequacy of the search belongs to the public body. *Id.* at ¶ 32. The public body typically meets that burden by "submitting reasonably detailed affidavits setting forth the type of search it performed and averring that all locations likely to contain responsive records were searched." *Id.* Once such affidavits have been submitted by the public body, the burden then shifts to the requester to produce countervailing evidence that the search was not adequate. *Id.*

¶ 32        Having set out the applicable law and standards, we turn now to the first contention that we discern in plaintiff's brief on appeal: that "defendants never provided complaint registers and repeater lists." With the exception of two cited cases, the quoted language is the entirety of plaintiff's argument on this issue. Accordingly, the thrust of plaintiff's contention in this respect is unclear. We do not know whether plaintiff contends that defendants did not conduct an adequate search for CR and RL records, that defendants improperly withheld certain complaint registers and repeater lists, or that defendants or the trial court erred in some other respect.

¶ 33        The two cases cited by plaintiff do not aid in clarifying plaintiff's contention. In *Watkins v. McCarthy*, 2012 IL App (1st) 100632, this Court addressed the question of whether CR records are subject to disclosure under FOIA and concluded they were. In *Fraternal Order of Police, Chicago Lodge No. 7 v. City of Chicago*, 2016 IL App (1st) 143884, the court reversed the injunction, cited by defendants in their reply in support of their third motion for summary judgment, that had prevented the disclosure of CR records that were more than four years old. Taken together, these cases stand for the proposition that CR records are subject to disclosure under FOIA. There is no dispute here, however, regarding whether CR records are subject to disclosure.

¶ 34        We observe that, despite plaintiff's contention that defendants "never" produced CR records, the record affirmatively belies such a contention. The affidavits submitted by defendants in support of their second motion for summary judgment indicate that, on October 11, 2017, because plaintiff did not include officer names in his FOIA requests at issue here, defendants mailed CR records to plaintiff based on 13 officer names that were included in a separate FOIA request from plaintiff and that matched names that appeared in the investigative file related to the Pouncy murder. In addition, after the trial court ruled that defendants were

required to produce CR records that were more than four years old, defendants conducted a second search for CR records, this time using identifying information related to the Pouncy murder. This search produced another CR record file, which was produced to plaintiff on May 9, 2019.

¶ 35        We observe that plaintiff has made no contention that defendants' searches for CR records were inadequate. Nor did plaintiff produce any counterevidence in the trial court that would call into question the adequacy of defendants' searches for CR records. We also observe that despite defendants expressing confusion regarding what "RL records" or "repeater lists" are, plaintiff never clarified the term, either in the trial court or on appeal here. Absent clarification, we cannot say whether defendants produced any RL records, nor can we say that defendants erred in failing to produce a category of documents plaintiff did not define. Based on all of this, we cannot agree that reversal is warranted based on plaintiff's claim that he was never provided with CR or RL records.

¶ 36        Plaintiff's next contention on appeal is that he "stated the reasons in the third summary judgment but this was never answered by the defendants or the judge on 8-10-18." We first note that August 10, 2018, is the date that the trial court entered its order granting defendants' second motion for summary judgment in part and denying it in part. Because defendants had not yet filed their third motion for summary judgment at that point, neither defendants nor the trial court could have addressed the "reasons" raised by plaintiff in the proceedings on the third motion for summary judgment. Giving plaintiff the benefit of the doubt, however, we assume that the reference to the August 10, 2018, order was a mistake and that plaintiff intended to reference the trial court's order granting defendants' third motion for summary judgment.

¶ 37 Plaintiff's contention in this respect fails for a number of reasons. First, plaintiff does not explain what he means by his contention that he "stated the reasons in the third summary judgment." We can only assume that he is referring to the arguments that he raised in opposition to defendants' third motion for summary judgment. Of course, plaintiff raised many arguments in response to defendants' third motion for summary judgment, and he does not clarify whether he intends to invoke some or all of those contentions here on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research."). In any case, plaintiff is not permitted to incorporate by reference arguments made in the trial court. See *People v. Guest*, 166 Ill. 2d 381, 414 (1995) (concluding that arguments the defendant made in the trial court and attempted to incorporate by reference in his appeal were not properly raised under Supreme Court Rule 341 and, therefore, were waived).

¶ 38 Second, it is also unclear what plaintiff means when he argues that defendants and the trial court never "answered" his reasons, *i.e.*, whether he is claiming that they did not provide responses to his contentions that were satisfactory or that they did not respond at all. To the extent that plaintiff intended the former, we are unable to address this contention, because, as stated above, plaintiff does not identify which "reasons" he is referring to, and he does not make

any argument or cite any legal authority establishing that the trial court's and defendants' responses to his contentions were inadequate. Likewise, to the extent that plaintiff intended the latter, we are unable to afford him any relief on that basis. Defendants did, in fact, file a reply to plaintiff's response to the third motion for summary judgment. Although the trial court did not issue a written order explaining its decision to grant the third motion for summary judgment, it was under no obligation to do so. See S. Ct. R. 366(b)(3)(i) ("No special findings of fact, certificate of evidence, propositions of law, motion for a finding, or demurrer to the evidence is necessary to support the judgment or as a basis for review."); *Stony Island Church of Christ v. Stephens*, 54 Ill. App. 3d 662, 668 (1977) ("Orders of the circuit court need not include findings of fact or conclusions of law. [Citations.] On the contrary, we are obliged to extend all reasonable presumptions in favor of the judgment or order appealed from."). Moreover, because plaintiff did not include in the record on appeal a transcript of the hearing on defendants' third motion for summary judgment, we have no way of knowing whether the trial court provided any explanation for its ruling at the hearing. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 39 Plaintiff's third contention is as follows: "Plaintiff['s] lawsuit began asking for two FOIA requests. #RD632-040, and RD#610-681. Defendants stated that Plaintiff only had 150 pgs of RD#610-681. Defendants never produce[d] an index of records for RD#632-040." We first observe that, based on our review of the record, the RD numbers plaintiff refers to are not

numbers assigned to his respective FOIA requests, but are, instead, numbers assigned to files in the Records Division of the CPD. Thus, it is not, as plaintiff's contention might imply, the case that defendants responded to one but not the other of plaintiff's FOIA requests. As previously discussed, the parties agree that the two FOIA requests at issue in this matter were virtually identical. Accordingly, there is no dispute that defendants' responses were joint responses to both requests.

¶ 40    That aside, we note that plaintiff's statement that there were only 150 pages on RD 610-681 does not actually suggest any error. For example, plaintiff does not contend on appeal that there were additional, unproduced documents related to RD 610-681, nor does he contend that defendants' search for documents related to RD 610-681 was inadequate. Accordingly, this is not a basis on which we will reverse the trial court's judgment.

¶ 41    Plaintiff also states that defendants never produced an index of record for RD 632-040. He does not, however, contend that defendants were under an obligation to do so or cite any authority in support of such a proposition. Even so, plaintiff's contention fails. Pursuant to section 11(e) of FOIA (5 ILCS 140/11(e) (West 2014)), "[o]n motion of the plaintiff, *** the court shall order the public body to provide an index of the records *to which access has been denied*." (Emphasis added.) The record in this case does not contain any evidence that, other than the redaction of exempt material within documents, plaintiff has been denied access to any records. Accordingly, we see no basis on which to conclude that defendants were required to provide plaintiff with an index of records.

¶ 42    Finally, we observe that, in his conclusion, plaintiff asks that we reverse the trial court's grant of summary judgment in favor of defendants and that we grant plaintiff an *in camera* inspection of records. Plaintiff does not, however, identify which records require an *in camera*

inspection. In addition, *in camera* inspections, when necessary, are to be conducted by the trial court, not plaintiff. See 5 ILCS 140/11(f) (West 2014) ("*[T]he court* *** shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act.*" (Emphasis added.)). Accordingly, even if we were to conclude that reversal of the trial court's judgment in this matter was required, granting plaintiff an *in camera* inspection would not be an appropriate form of relief.

¶ 43       We have addressed all of the contentions that we are able to discern in plaintiff's brief on appeal. To the extent that plaintiff intended to make claims of error that we have not identified or addressed, we deem any such contentions waived, because they are not clearly stated or supported by argument and relevant authority. Under Supreme Court Rule 341(h)(7), an appellant's brief is required to contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Where a party fails to provide a well-reasoned argument supported by legal authority, that party waives that contention. *Sakellariadis*, 391 Ill. App. 3d at 804. Moreover, "[a] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co.*, 145 Ill. App. 3d at 719.

¶ 44       We recognize that plaintiff is acting *pro se*. For that reason, we have endeavored to identify all potential contentions raised in his brief and to address them to the fullest extent possible under the circumstances. Nevertheless, a *pro se* litigant is held to the same standards as a litigant represented by a licensed attorney. *Williams v. Department of Human Services*

*Division of Rehabilitation Services*, 2019 IL App (1st) 181517, ¶ 30. Accordingly, plaintiff is not, due to his *pro se* status, relieved of his obligation under Supreme Court Rule 341(h)(7) to clearly state his contentions and the reasons for them, supported by citations to the record and relevant authority. See *id.* ("Williams *pro se* status does not excuse him from the burden of providing this court with a cohesive argument supported by legal precedent.").

¶ 45    Despite our conclusion here, we recognize that plaintiff may have been asking for specific material and documents for which he did not know the correct name. The way that FOIA is written makes it very difficult for anyone requesting material or documents to rely on the complete cooperation of the public body at issue. This is because internal names and acronyms for data, documents, information, and material may be so obscure or technical that it would be unlikely that anyone outside of that public body would know the proper terms necessary to make a specific request. To paraphrase the famous quote from former Secretary of Defense Donald Rumsfeld, a person making a FOIA request will have known knowns and some known unknowns, but there may also be some unknown unknowns within the public body that will ultimately defeat a FOIA request, unless the public body is actively involved and completely determined to be transparent.

¶ 46                                CONCLUSION

¶ 47    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 48    Affirmed.